**E-FILED**
Tuesday, 03 May, 2005 08:49:09 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| KENNETH A. MCCREADY, Plaintiff, | } | Civil No. 2:05-CV-2032 |
| v. | } | Judge McCuskey |
| LARRY STERN, Defendant. | } | Magistrate Judge Bernthal |
| People of the State of Illinois, *ex rel*, Kenneth A. McCready, Plaintiff, | } | |
| v. | } | |
| Larry Stern, Defendant. | } | |

**F.R.C.P. 38 & CDIL-LR 38.1 Jury Trial Demand**

FILED
MAY 0 2 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Kenneth A. McCready, in his own proper person, and with demand for trial by jury, complains against the Defendant Larry Stern as follows:

JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. §§ 1692-1692o (the Fair Debt Collection Practices Act or "FDCPA"), and the Court may properly exercise supplemental jurisdiction over the pendent claims premised in Illinois law and statute pursuant to 28 U.S.C. § 1367.

2. Plaintiff is an individual but not a "consumer," as the term is used throughout the FDCPA. This action is not premised on the consumer provisions of FDCPA.

3. Plaintiff attempts to buy vehicles at lien sales and, when Plaintiff observes fraud or other illegalities in such lien sales, he tries to buy the interests of other persons and entities which are trammeled in such sales, to then enforce in his own name.

4. Defendant Larry Stern is a "debt collector," as the term is defined and used in the FDCPA. Defendant regularly uses the mails and advertisements placed in

publications on and over the internet in a business, the principal purpose of which is the collection or attempted collection of debts or, in the alternative, Defendant regularly collects or attempts to collect, directly *and* indirectly, debts due or alleged to be owed to others.

5. Stern's core business consists of rendering legal advice to and advertising, advising in, and procuring new certificates of title for mechanic lienors in their lien sales. A part of this business, on Plaintiff's information and belief, includes making written demands (by mail) of alleged debtors that they pay putative debt or face the prospect of losing their vehicle at lien sale.

6. In situations where Defendant is unable to ascertain the putative debtor's address he or someone acting under his control and instructions files various papers in the Circuit Court, including affidavits which he prepares.

7. Stern is not a licensed Illinois attorney.

8. Defendant Stern is also not a licensed collection agency or agent in Illinois.

9. Defendant Stern's principal place of business is Skokie, Illinois. Each of Defendant's letters, applications and advertisements as pleaded herein constitutes a "communication," as that term is defined and used in FDCPA. On Plaintiff's information and belief, Stern sent to the Illinois Secretary of State's offices, located in Sangamon County, Illinois (which is in this District) various forms, including an application for new certificate of title for the subject vehicle and affirmation in support of that application.

10. If Defendant did not send these forms himself through the mails, on Plaintiff's information and belief, he prepared them, advised the putative mechanic lienor as to their use, and gave them to the lienor, knowing or expecting that they would be mailed to the Secretary of State.

11. Plaintiff has actually purchased one vehicle at a similar lien proceeding (mechanic's lien sale) which was advertised by Defendant and at which the mechanic lienor was also advised by Defendant. Defendant provided that mechanic lienor various forms, including the application for title, affirmation in support of that application and vehicle use tax return, which the lienor was instructed to use to obtain that title or was to give to the purchaser at such sale, if the lienor did not purchase.

12. Defendant (or an employee or someone acting under his direction and control) prepared a pre-addressed envelope with instructions to the mechanic lienor to mail these forms or give them to the purchaser to mail, knowing or expecting

that the same would be mailed, in which these forms were to be mailed to the Secretary of State in Springfield, IL.

13. Plaintiff wishes to continue in his own business, unencumbered by ethical or legal obligation *not to further* the illegal schemes and practices of this Defendant and, to that end, seeks a judicial declaration that the Defendant's business is unlawful in violation of a number of Illinois statutes, and against the common law proscription against unauthorized practice of law.

14. The Defendant's actions caused Plaintiff harm in this District and Division. Jurisdiction and venue are proper here.

## COUNT I--FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §§ 1692-1692o)

15. Plaintiff incorporates *all other* as well as the preceding substantive allegations as if the same were fully set forth here.

16. Plaintiff, prior to the unlawful acts complained of herein, had an agreement (described more fully elsewhere herein) with one Vayline Griffin (not a party hereto), by virtue of an assignment from the original obligor, GMAX Motors, Inc., by which Griffin is obligated to him in particular amounts for a purchase money installment loan agreement.

17. GMAX Motors, Inc. sold a 1991 Chevrolet Caprice to Griffin and was granted a purchase money security interest in the Chevrolet in its agreement with Griffin.

18. On or about January 15, 2004, Plaintiff observed in the Pioneer Press newspaper (online edition), the following advertisement:

> LIENS PUBLIC NOTICE Notice is hereby given that on Feb 20, 2004, at 1:00 PM, A sale will be held at: JOHNSON AUTO REPAIR, 7356 S ASHLAND, CHICAGO, IL 60636, To sell the following articles to enforce a lien existing under the laws of the State of Illinois against such articles for labor, services, skill or material expended upon a storage furnished for such articles at the request of the following designated persons, unless such articles are redeemed within thirty (30) days of the publication of this notice. NAME OF PERSON: DELOREIA BURROWS & GMAX MOTORS Description of Article: 1991 CHEVROLET V I N # 1G1BL53E3MW117135 Amount of Lien: $1,995.00 Published in Pioneer Press 1/15/04 (813534) C Pioneer Press Online

19. When Plaintiff observed the advertisement in the Pioneer Press newspapers, he contacted GMAX Motors, Inc. and, in advance of the advertised sale date, purchased the loan and security interest. He now holds both the installment loan agreement and the rightful certificate of title for the vehicle (which has been abrogated, as is described more fully elsewhere herein).

20. On Plaintiff's information and belief, Defendant Stern placed the advertisement recited above. The advertisement constitutes a "communication" as the term is defined and used in FDCPA.

21. There are a number of untruths contained in that particular advertisement. Among these are the amount asserted as and for the mechanic lienor, Johnson's Auto's, lien. Plaintiff spoke via telephone with Wallace Johnson, the proprietor of Johnson's Auto, on January 19, 2004.

22. Johnson indicated he had no knowledge whatsoever of the amount asserted in the advertisement as his lien, $1995.00. Johnson advised that he had done no work whatsoever to the subject vehicle for which he had charged any fee. He also indicated he had no intention of having such a sale as the advertisement indicated.

23. Johnson said Larry Stern had approached him and advised that he, Larry Stern, could get Johnson a clear title to the vehicles on his lot.

24. Johnson indicated, further, that a woman had brought the vehicle in to his shop for diagnosis or repair advice, that it was his opinion that the vehicle needed a transmission and that he had done no work on or to the vehicle and that there were then no charges accrued or owing. Lastly, he indicated that he would check with Larry Stern on what was actually going to happen and communicate this to Plaintiff. He failed to respond further to Plaintiff's phone call or Plaintiff's letter, *infra*.

25. Plaintiff, as is his routine practice in such lien cases, wrote Johnson a letter, a copy of which is attached to <u>the initial Complaint</u> in this matter as "Exhibit A" and which is incorporated herein as if set forth fully. In that letter, Plaintiff asked Johnson to advise him the nature of his work and the terms of his advertised "sale." Johnson did not answer that inquiry.

26. In Plaintiff's letter, he also noted that the sale was advertised to be held at 7356 S. Ashland, Chicago, while Johnson's repair shop was actually located at 7256 S. Ashland and asked for clarification of this. Johnson ignored Plaintiff's inquiry.

27. Defendant Stern had advertised the sale at a currency exchange at 7356 S. Ashland, while knowing that no such sale would be held there. The address for the sale was not Johnson's facility, nor did Johnson intend to conduct any sale there.

28. Defendant Stern advertised a sale to be held, while knowing full well that no sale would be held and particularly no sale would be held at the address he published.

29. On Plaintiff's information and belief, Stern then prepared and filed with the Illinois Secretary of State an application for new certificate of title in the name of Johnson's Auto, supported by his affirmation (or Johnson's affirmation, which was prepared, typed and advised by Stern) that the lien sale was held in accordance with law, while knowing that no sale had been held, that the lien amount asserted was phony and that Johnson had no lien, and that neither Stern nor Johnson had abided any lien law in the proceeding.

30. As alleged above, if Stern did not himself mail the application and supporting documents to Secretary of State, he had prepared them and an envelope pre-addressed to SOS that he expected would be used in the U.S. mails to foreclose the putative mechanic lien and divest Plaintiff of his own interest in the vehicle.

31. Stern's application for title was approved by the Secretary of State, and "Johnson Auto Repair" was issued a new certificate of title for the Chevrolet, which new title "wiped" or omitted any reference to Plaintiff's prior, perfected security interest. This act of "wiping" the title was a felony.

32. Defendant's attempt to collect any amount including, but not limited to "1995.00" not contracted by Vayline Griffin violates sections 1692e(2)(A) and (B) and 1692f(1) because the amount he was attempting to collect was not authorized by agreement between Griffin, Burrows and Johnson, on Plaintiff's information and belief.

33. The Defendant failed to include any of the section 1692e(11) disclosures that his communications were from a debt collector, in his advertisements. On Plaintiff's information and belief, Defendant also failed to include these disclosures in his demand letter or letters and any affidavit he filed in the Cook County Circuit Court, because he has, heretofore, failed to recognize that his conduct is governed by FDCPA.

34. No dollar amount could be collected, because none was owed. All of Defendant Stern's attempts to collect <u>any amount</u> violated section 1692e. Stern therefore

misrepresented the amount, character and legal status of the putative debt. These actions specifically violated section 1692e(2), (4), (5), and (10).

35. The name, Johnson Auto Repair was also a fictitious name used by Wallace Johnson. However, Johnson had failed to file a certificate of assumed name with the county clerk. Stern should have known this, and his publication of the false name, not the name in which Johnson should lawfully have been conducting business, violates section 1692e(14). The only names Stern could lawfully have used in his collection of the putative debt were his own and the name Wallace Johnson. Johnson Auto Repair is a nonentity.

36. Defendant's advertisement was misleading and deceptive in and of itself, because it indicated an attempt to collect a debt that was not owed, that the putative lienor acknowledged to Plaintiff was not owed, by sale, which the putative obligor admitted was not going to take place, and which Stern, the debt collector, advertised at an address and time where and when he knew no sale was going to be held.

37. Stern's advertisement of the name Deloreia Burrows in the January 15, 2004 Pioneer Press advertisement also violates section 1692d(3). Burrows was a consumer, as the term is defined and used in FDCPA. GMAX Motors, as an accommodation, placed Burrows name on the certificate of title for Ms. Griffin. Stern didn't actually know who the actual owner of the vehicle was, but published Burrows' name in violation of sec. 1692d(3).

38. Stern's advertisement of the putative "foreclosure" sale, which advertisement or advertisements include the names of Griffin, Burrows and Plaintiff's assignor, and which advertisement or advertisements constitute communication with tens if not hundreds of thousands of persons also violates sec. 1692c(b).

39. Defendant Stern's actions violated section 1692f because he, by applying for new certificate of title (or, if it was not he who applied for that title, by preparing all necessary forms to obtain new certificate of title, and a pre-addressed envelope in which he expected such forms would be mailed to Secretary of State) unlawfully removed Plaintiff of Plaintiff's prior and superior property interest in and to perfection of the security interest from the vehicle's certificate of title, which Stern had no right to eliminate. Thereafter and at every time since, Plaintiff could not and cannot repossess the car because he has no *demonstrable, certified* interest in it.

40. Defendant Stern has also violated sections 1692e(5) and 1692f by engaging in the unauthorized practice of law and in the unlicensed practice of the business of a collection agency (as are complained of in greater detail elsewhere herein).

41. As of August 16, 2004, the unpaid balance, including principal and accrued interest, on the loan for which the Chevrolet operated as security, was $1548.00.

42. Defendant has done this in, literally, hundreds of cases, and advertises hundreds of sales annually. He has committed numerous felonies in wiping prior, perfected security interests from certificates of title, and he does so willfully, knowingly and maliciously because, as an ex-Secretary of State employee, he can get away with it knowing the Secretary of State and Attorney General won't enforce the laws he is so maliciously violating.

43. It is appropriate that this Court enter judgment in favor of Plaintiff and against Defendant Stern in the amount of the prior obligation that Stern ignored and abrogated, plus $1000.00 as and for statutory damages because of the willful, malicious and particularly unlawful nature in which he acted.

WHEREFORE, Plaintiff prays that this court enter its judgment in his favor against Defendant LARRY STERN in the amount of $2600.00 in damages, or such higher or lesser amount as the trier of fact deems appropriate, together with the costs and attorney fees Plaintiff incurs in this action.

## COUNT II--UNAUTHORIZED PRACTICE OF LAW--<br>VIOLATION OF ILLINOIS COMMON LAW

44. Plaintiff incorporates *all other* as well as the preceding substantive allegations as if the same were fully set forth here.

45. Defendant Stern's business consists of collection of debts through the assumption of powers and rights commonly afforded licensed attorneys at law.

46. For a fee (on information and belief, $300 to $350 or more), Defendant Stern advises mechanic lienor "clients" as to how to obtain certificates of title for vehicles which are clogging their lots.

47. As a part of this practice, which is unrelated to and not incidental to any other business Stern is engaged in, Stern first retains his "clients" by advising the "clients" that he can obtain clear title for vehicles in the lienor's possession.

48. Stern must first decide which Illinois lien law he will advise and proceed under: The Labor and Storage Lien Act, the Labor and Storage Lien (Small Amount) Act,

or the Sale of Unclaimed Property Act, the analysis and implementation of which require the skill and expertise commonly exercised by licensed attorneys at law.

49. Stern then decides where and in what publications he will advertise the putative "sale" of such vehicles. Because "newspaper" is a legal term of art, the decision as to what publication to publish such lien sale advertisements in is discretion normally exercised by licensed attorneys at law.

50. In determining where best to advertise any such lien foreclosure proceeding, Stern must (or should) consider the effect and import of a long line of cases which declare and decide the obligation of secured parties or lienholders with regard to publication of secured or lien sales in proximity to the physical location of the collateral. This professional determination is afforded to licensed attorneys at law in Illinois.

51. Stern must also determine and advise his "clients" as to the relationship between the "client" lienor's "lien," and any other interest in the vehicles, such as "security interests" like the interest of this Plaintiff in the instant case. This determination and advice are commonly exercised in Illinois by licensed attorneys at law.

52. Because Stern is not a licensed attorney at law, he doesn't and cannot understand the relationship between, the assessment of priorities of and the obligations one in his position owes to the public, the lienors, the prior, perfected lienholders, and specific persons (like this Plaintiff) who express desire and intention to attend public sales and bid on the collateral.

53. In this analysis, Defendant Stern must comprehend and understand how to implement the particular lien law under which he claims to be foreclosing, in accordance with all of the requirements of the Uniform Commercial Code and the contracts between any particular lienor "client" and that lienor's customer, and that customer and any prior, perfected lienholder (such as any bank, or the instant Plaintiff), the common law which defines and construes such terms as "public" or "private" sale, in context of various statutory provisions and caselaw interpreting those statutes which impose obligations on such lienors who are foreclosing valid liens.

54. The exercise of all of the broad discretion and expertise involved in this legal analysis is afforded only to licensed attorneys at law in Illinois.

55. The nature of the proceedings under the various lien laws is vastly different, as matters of law, which Defendant Stern is incompetent to understand and implement. For instance, for a number of years, Stern advertised numbers of lien sales at the same exact time on the exact same day, for numerous "clients." This

is not commercially reasonable, as a matter of law, and in so advertising such lien sales in such fashion, Stern has created monumental potential liabilities for his "clients," which an attorney at law might insure against by procuring malpractice insurance. No non-attorney can buy such malpractice insurance.

56. Stern is not qualified to and cannot comprehend the distinction between and differing obligations imposed on him and his "clients" depending on whether the particular lien law he advertises foreclosure under or prepares the various documents to submit or be submitted to the Secretary of State to obtain clear title requires "public" sale or "private" sale.

57. Stern has also advertised what constitute "public" sales in past proceedings, but has refused to advertise the time of such proceedings and his "clients" have refused to tell Plaintiff what time these particular sales would be. This renders such sales commercially unreasonable, as a matter of law.

58. A competent licensed attorney at law would know and understand the obligation to one who identifies himself as ready, willing and able to purchase at "public" sales, if that prospective purchaser asks Stern to tell him what time such sales would be held, as Plaintiff has repeatedly asked Stern.

59. Because Stern is not qualified to advise others on these lien proceedings, he also does not comprehend and cannot advise on what the lienor "clients'" obligations are to "*maximize the net proceeds of*" their particular proceedings, as required by the various lien statutes under which Stern repeatedly publishes notices of sale.

60. Competent licensed attorneys at law would advise mechanic lienor clients to cooperate with Plaintiff in his desperate attempts to learn the nature of the work giving rise to each lienor's lien. Plaintiff has repeatedly contacted Stern to ask that he learn such information from his "clients" and have the "clients" contact Plaintiff with such information or Stern himself convey such information to Plaintiff, but Stern has willfully refused to cooperate.

61. Because Stern often represents "clients" situated in municipalities governed by municipal ordinances, he must also grasp and be able to advise his "clients" as to the legal effect of such ordinances as require his "clients" to be licensed to perform any services they claim to have performed which give rise to any particular lien, including but not limited to the "clients'" obligations under the Automotive Repair Act and the Automotive Collision Repair Act in conjunction with or in opposition to the requirements of local ordinances.

62. For instance, Stern regularly advises "clients" in the city of Chicago as to their rights or entitlements to charge their customers for "storage," when there is no

writing that declares the rights of the customer viz. the particular lienor "clients". In the instance of the Chevrolet Caprice, Plaintiff believes that Stern advised Johnson that he could charge for and foreclose for such "storage" charges, though Johnson was not then licensed in the city of Chicago to charge for such anomalous and easily-falsified charges.

63. As pleaded elsewhere herein, in instances where any particular customer cannot be found, Defendant Stern often (on Plaintiff's information and belief) files or prepares to be filed upon his advise and expertise, and on behalf of his lienor "clients," in the Circuit Courts of various Illinois counties, affidavits attesting that such customer or customers cannot be found, so that such foreclosure sale may be conducted without actual notice to them. The preparation and actual filing of such affidavits directly in the Circuit Court constitutes the practice of law more properly exercised by a licensed attorney at law.

64. If, of course, Stern does not file the requisite affidavit in such cases, the omission of this duty is because he lacks the requisite skill and training to determine whether such affidavit is required.

65. In certain lien sales, where an actual sale is held, and the sales proceeds are in excess of any legitimate amount which creates a mechanic's lien, Defendant Stern fails to advise his "clients" that the net proceeds are not theirs to keep but should be turned over to the owner, the prior perfected lienholders, the county or the state in certain instances. The determination as to who is entitled to these proceeds is a determination that can only be made by one with the requisite skill and training of a licensed attorney at law, who can analyze the statutory provisions involved, including the laws concerning escheats.

66. In many instances, the particular customers of the mechanic lienors have died. In those instances, Defendant Stern is required to know of and understand the impact of the Illinois Probate Act, the filing of claims in various Courts, the impact on his own "clients" and the obligation to the decedent, his or her estate, and the general public. This advice is the kind of advice that is typically dispensed by licensed Illinois attorneys at law.

67. Another instance that regularly surfaces, and which Defendant Stern fails to comprehend and properly advise his mechanic lienor "clients" on is when a mechanic's customer files a petition for relief under Title 11 of the United States Code (bankruptcy). Stern regularly ignores the filing of such petitions in advising his "clients" and in publishing and proceeding on such foreclosure sales as is described elsewhere herein.

68. The intricate relationship between the common law, the statutes and ordinances governing vehicle repairs, the mutuality of obligations and duties under bankruptcy and non-bankruptcy laws, including but not limited to the automatic stay in bankruptcy and the injunction of the bankruptcy discharge is a relationship the impact and effect of which should be advised only by one who is licensed as an attorney at law.

69. In all of this expert advisory service, Defendant Stern prepares numerous papers and forms which affect the rights of many persons and entities, including his own lienor "clients," the actual owner or owners of subject vehicles, prior, perfected lienholders (including but not limited to banks, automobile dealers and finance companies, but title lenders, payday lenders and prospective purchasers), and which forms are considered to be "judicial admissions" which may affect the rights of his "clients" contrary to their own interests under simple principal/agent doctrine, and the preparation of and advice of effect of such forms which is more properly exercised by licensed attorneys at law.

70. Of course, as Plaintiff pleads elsewhere herein, Defendant Stern also does not comprehend and cannot advise his "clients" as to the effect of federal laws governing, concerning or impacting on their lien foreclosure proceedings. The exercise of that professional judgment and discretion is afforded only to licensed attorneys at law.

71. Because Stern is not a licensed attorney at law, he literally causes more harm than the good he might be imagined to do. This is the principal purpose behind the prohibition against the unauthorized practice. Only those who are qualified by law and Supreme Court rules to advise others should so advise others. The payment of a fee is influential in this decision but is not controlling.

72. Defendant Larry Stern's acts of advising mechanic lienors, publishing and advertising foreclosure of liens in vehicles and other personal property, and in preparation of various forms, affidavits, affirmations, vehicle use tax returns and applications for certificates of title constitute the unauthorized practice of law, in violation of the Illinois Supreme Court's holding in *Chicago Bar Ass'n v. Quinlan and Tyson, Inc.*, 34 Ill.2d 116, 214 N.E.2d 771 (1966), and subsequent decisions further interpreting that decision or implementing it.

73. Stern's advice and "professional" service are given for a fee, and are also completely unrelated to any other legitimate automotive business in which he might be engaged.

WHEREFORE, Plaintiff prays that this court enter its judgment preliminarily and permanently enjoining Defendant Larry Stern from the acts complained of herein constituting the unauthorized practice of law, and that the Court further award Plaintiff the actual litigation costs and attorney fees he incurs in this action.

## COUNT III--UNAUTHORIZED PRACTICE OF LAW--ILLINOIS ATTORNEY ACT (705 ILCS 205)

74. Plaintiff incorporates *all other* as well as the preceding substantive allegations as if the same were fully set forth here.

75. The Illinois Attorney Act prohibits the unauthorized practice of law:

> No person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State. No person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney. . . . Any person practicing, charging or receiving fees for legal services within this State, either directly or indirectly, without being licensed to practice as herein required, is guilty of contempt of court and shall be punished accordingly, upon complaint being filed in any Circuit Court of this State. Such proceedings shall be conducted in the Courts of the respective counties where the alleged contempt has been committed in the same manner as in cases of indirect contempt and with the right of review by the parties thereto. 705 ILCS 205/1.

76. The Defendant is practicing as an attorney or counselor at law, and is unlicensed to do so.

77. Because the Defendant is so unqualified to act, his unlawful advice is both directly and indirectly preventing Plaintiff from participating lawfully, fully and completely in both "public" and "private" sales of collateral and, if Plaintiff is granted the relief he seeks by this claim, Plaintiff's harm will, thereby, be remedied.

WHEREFORE, Plaintiff prays that this court enter its judgment finding Defendant LARRY STERN to be in contempt of Court for the unauthorized practice of law, and enter the appropriate injunctive relief to prohibit Defendant Stern from engaging in any of the acts complained of in the instant action. Plaintiff also asks for an award of his actual litigation costs and attorney fees Plaintiff incurs in this action.

## COUNT IV--UNAUTHORIZED PRACTICE OF COLLECTION AGENCY--ILLINOIS COLLECTION AGENCY ACT (225 ILCS 425)

78. Plaintiff incorporates *all other* as well as the preceding substantive allegations as if the same were fully set forth here.

79. Defendant Stern is a "collection agency" as that term is defined and used in the Act.

80. Section 14a of the Collection Agency Act permits:

> The practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Director, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin such entity from engaging in such practice. Upon the filing of a verified petition in such court, the court, if satisfied by affidavit or otherwise that such entity has been engaged in such practice without a valid and current license, may enter a temporary restraining order without notice or bond, enjoining the defendant from such further practice. Only the showing of nonlicensure, by affidavit or otherwise, is necessary in order for a temporary injunction to issue. 225 ILCS 425/14a.

WHEREFORE, Plaintiff prays that this court enter its judgment preliminarily and permanently enjoining Defendant LARRY STERN from the unlicensed practice of the business of a collection agency. Plaintiff also prays that the Court award him the costs and attorney fees Plaintiff incurs in this action.

## COUNT V--ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505)

81. Plaintiff incorporates *all other* as well as the preceding substantive allegations as if the same were fully set forth here.

82. Defendant Stern was, at the pertinent times, and is engaged in trade and commerce, as the terms are defined and used in the Act (hereinafter, CF&DBPA).

83. The CF&DBPA declares:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

84. Stern has engaged in unfair and deceptive acts and practices in the advertisement of the sale to foreclose a putative mechanic's lien, which was non-existent, including but not limited to the advertisement of a false location for such sale, and following which Stern either applied for a new certificate of title or, in the alternative, prepared the necessary papers and documents for another which he reasonable anticipated and expected would be utilized to apply for a new certificate of title the submission of which was devised to and actually resulted in the "wiping" of Plaintiff's prior, perfected security interest from the vehicle's new certificate of title.

85. As a direct and proximate cause of Defendant Stern's unfair and deceptive acts and practices, Plaintiff has suffered the loss of his security interest that, at the time, secured a debt of over $1548.

86. Section 10a(a) of the CF&DBPA provides:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person.

87. A cause of action has accrued to Plaintiff by which he may recover his losses and an appropriate sum as and for punitive damages against Defendant Stern for his violations of the CF&DBPA.

WHEREFORE, Plaintiff prays that this court enter its judgment in his favor against Defendant LARRY STERN in the amount of $1548.00 in actual damages, or such higher or lesser amount as the trier of fact deems appropriate, and a suitable sum of at least ten times that amount as and for punitive damages for Defendant Stern's willful and malicious unlawful actions which have caused Plaintiff damages, together with the costs and attorney fees Plaintiff incurs in this action.

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

"I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on May 2, 2005".

**TRIAL BY JURY IS RESPECTFULLY DEMANDED**

Respectfully submitted,

Dated: May 2, 2005

By: ______________________

Kenneth A. McCready
Plaintiff, *in pro per*
P.O. Box 10
Loda, IL 60948
(217) 390-7523

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| KENNETH A. MCCREADY, Plaintiff, | } | Civil No. 05-2032 |
| | } | Judge Michael McCuskey |
| vs. | } | |
| LARRY STERN, Defendant. | } | |

FILED
MAY 0 2 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

**NOTICE OF FILING**

**To: USDC CD IL, Urbana Div, Clerk,** 218 U.S. Courthouse 201 S. Vine Street Urbana IL 61802 Telephone: 217-373-5830; **Larry Stern, Defendant,** 4307 Suffield Court Skokie, IL 60076 (847) 679-9139

Please take notice that on May 2, 2005, I mailed to be filed with the Clerk of this Court, one copy of Plaintiff's FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL, and one copy of this document.

Name: Kenneth A. McCready, Plaintiff, *in pro per*
Address: P.O. Box 10 Loda, IL 60948
Telephone: (217) 390-7523

**PROOF OF SERVICE BY MAIL**

I, Kenneth A. McCready, not an attorney, state that on May 5, 2005, I served a copy of this notice and each document specified above on each person to whom it is directed above by placing it in an envelope addressed to him or her on which first-class postage is duly prepaid and depositing the envelope in the U.S. mail in Loda, Illinois.

[ X] "Under penalties as provided by law I certify that the statements set forth in this instrument are true and correct."

Dated: May 5, 2005

By: ______________________
Kenneth A. McCready