E-FILED
Monday, 23 May, 2005 03:36:16 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **KENNETH A. McCREADY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05-2032** |
| | ) | **JURY DEMANDED** |
| **LARRY STERN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(1)**

**BACKGROUND**

1. In the instant case, Plaintiff is alleging that Defendant placed the following Notice in the Pioneer Press newspaper:

> LIENS PUBLIC NOTICE Notice is hereby given that on Feb 20, 2004, at 1:00 PM, A sale will be held at: JOHNSON AUTO REPAIR, 7356 S ASHLAND, CHICAGO, IL 60636, To sell the following articles to enforce a lien existing under the laws of the State of Illinois against such articles for labor, services, skill or material expended upon a storage furnished for such articles at the request of the following designated persons, unless such articles are redeemed within thirty (30) days of the publication of this notice. NAME OF PERSON: DELOREIA BURROWS & GMAX MOTORS Description of Article: 1991 CHEVROLET V I N #1G1BL53E3MW117135 Amount of Lien: $1,995.00 Published in Pioneer Press 1/15/04 (813534) C Pioneer Press Online

2. Plaintiff further alleges that, upon reading said Notice and in advance of the advertised sale date, he contacted the lien holder (GMAX Motors, Inc.) that was listed in said Notice and proceeded to obtain an assignment of the loan and security agreement from GMAX, although the purported assignment appears to have been executed on August 16, 2004.

3. Plaintiff further alleges that - on January 19, 2004 - he next contacted the party asserting the lien in the Notice (Johnson Auto Repair) and spoke by telephone with the business'

owner, Wallace Johnson. Plaintiff alleges Mr. Johnson told him that he had no knowledge of the lien amount or sale and that, "Larry Stern had approached him and advised him that he, Larry Stern, could get Johnson a clear title to the vehicles on his lot." Plaintiff further claims that Mr. Johnson told him that a woman brought the vehicle to his shop for repair, that the vehicle needed a transmission, that he had done no work on the vehicle, and that there were no charges accrued or owing.

4. Plaintiff next alleges that he wrote a letter to Wallace Johnson (a copy of which is attached to Plaintiff's Complaint as "Exhibit A") and that Johnson failed to respond. This letter asked Johnson for details regarding the upcoming sale set forth in the Notice and also pointed out what Plaintiff believed to be errors or inaccuracies in said Notice.

5. Plaintiff then makes a number of allegations against Defendant:

a. That Defendant advertised a sale knowing the sale would not be held;

b. That Defendant filed an application with the Illinois Secretary of State for a certificate of new title in the name of Johnson Auto Repair or that, if he did not file said application, he prepared it;

c. That the lien amount was "phony", Johnson had no lien, that neither Stern nor Johnson had abided any lien law, and that no dollar amount could be collected because none was owed; and

d. That the new title "wiped out" any reference to Plaintiff's alleged security interest.

6. Based upon these allegations, Plaintiff asserts Defendant violated a number of provisions of the Fair Debt Collection Practices Act. Plaintiff also asserts that Defendant's

alleged actions constitute violations of Illinois common law and statutory law, namely: the unauthorized practice of law (common law and statutory), the unauthorized practice of a collection agency (statutory), and violate the Illinois Consumer Fraud and Deceptive Business Practices Act (of course, statutory).

**MOTION TO DISMISS COUNT I**

Defendant, LARRY STERN, by and through his attorneys, Flynn, Palmer & Tague, by the undersigned attorney, for his Motion to Dismiss Count I of Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(1), states as follows:

1. The only alleged basis for this Court's subject matter jurisdiction in this case is Plaintiff's assertion in Count I of his Complaint that the Fair Debt Collection Practices Act is applicable. Counts II through V are all premised upon Illinois statutory or common law. Plaintiff admits - in paragraph 1 of the First Amended Complaint - that this Court's jurisdiction over Counts II through V is supplemental jurisdiction that rests entirely upon the premise that the Court has jurisdiction in Count I pursuant to the FDCPA.

2. The Fair Debt Collection Practices Act, for the reasons set forth hereinbelow, is not applicable. As a result, this Court has no subject matter jurisdiction over Count I, no supplemental jurisdiction over Counts II through V and - accordingly - the cause should be dismissed.

3. In a Motion to Dismiss brought pursuant to FRCP 12(b)(1), all well pled allegations in the Complaint are, for the sake of the Motion, assumed to be true.

**A. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED DUE TO LACK OF STANDING**

4. The stated purpose of the FDCPA is to protect "consumers" from debt collection abuses. 15 U.S.C 1692(e).

5. The term "consumer" is defined as, "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. 1692a(3).

6. Section 1692k imposes liability upon, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person…." 15 U.S.C. 1692k(a).

7. In the instant case, Plaintiff is basing his standing on a purported assignment from GMAX Motors, Inc., a creditor of a certain Vayline Griffin. Plaintiff alleges that he was assigned the rights previously held by GMAX Motor, Inc's rights to enforce GMAX's installment loan against Griffin and to enforce its security interest in the vehicle.

8. Specifically, Plaintiff alleges - in paragraph 16 of his First Amended Complaint - that he had an agreement with Vayline Griffin, by virtue of an assignment from the original obligor, GMAX, by which Griffin then became obligated to Plaintiff pursuant to a purchase money installment loan agreement that was originally between GMAX and Griffin.

9. Even assuming the purported assignment is effective (which is disputed hereinbelow in section B of this Motion), Plaintiff is in the shoes of a creditor and, moreover, a creditor that is a corporation.

10. Although section 1692k has been interpreted by some Courts to broaden the concept of standing to parties who were not otherwise "consumers", it has been broadened to allow certain persons who were considered to be "standing in the shoes" of the consumer to be

given standing. To Defendant's knowledge, this section has not been interpreted by any Court to give standing to a creditor, let alone a creditor corporation.

11. Considering the purpose of the FDCPA as set forth hereinabove in paragraph 41, to allow one creditor to sue another creditor (or to sue the debt collector of a creditor) would not seem to be anywhere close to being within the scope or purpose of the FDCPA. It is therefore not surprising that no Court has broadened the FDCPA definition of standing so as to give standing to a creditor to bring a cause of action.

12. Plaintiff would have a more plausible argument for asserting standing if he were claiming to have been assigned the rights of Vayline Griffin, because he could assert that – while not a consumer – he was standing in the shoes of a consumer. Instead, however, Plaintiff is alleging to have been assigned the rights of a creditor corporation.

13. Insomuch as Plaintiff is attempting to base his standing to sue upon the assignment of rights from a corporation, not a person, and - even more importantly - a creditor, Plaintiff does not have standing to sue under the Fair Debt Collection Practices Act.

**B. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED DUE TO FAILURE TO STATE A CAUSE OF ACTION**

14. Plaintiff is basing his cause of action under the Fair Debt Collection Practices Act upon the claim that he sustained actual damages. However, he has failed to allege any actual damages.

15. As stated hereinabove, Plaintiff makes it clear in his First Amended Complaint that his standing to bring this cause of action is not as a consumer but, instead upon his alleged

assumption of GMAX Motor, Inc's rights to enforce its installment loan against a certain Vayline Griffin and to enforce its security interest in the vehicle.

16. Plaintiff further alleges in said paragraph that he had said agreement prior to the alleged unlawful acts set forth in the First Amended Complaint. Specifically, Plaintiff alleges - in paragraph 19 of his First Amended Complaint - that he purchased the loan and security interest from GMAX, "in advance of the advertised sale date". (February 20, 2004).

17. These allegations are contradicted by a document that is entitled "Affidavit and Statement of Account" which Plaintiff attached to his Motion for Entry of Default Judgment against Defendant Larry Stern - as "Exhibit B". Said document purports to be executed by the President of GMAX Motors, Inc. and also purports to sell and assign GMAX's installment loan agreement, security interest, and any right to enforce the same to Plaintiff. It is dated August 16, 2004.

18. Said document is insufficient to convey an assignment of rights from GMAX to Plaintiff in that it does not set forth what - if any - consideration exists for said assignment.

19. Said document is also insufficient to convey an assignment in that it is improperly notarized.

20. Furthermore, said document is insufficient in that it purports to be based upon a loan with a certain Deloreia Burrows as the borrower, and states that Ms. Burrows has made payments on said loan totaling $1,245. However, paragraph 4 of said document mysteriously has Ms. Burrows name crossed out and Vayline Griffin handwritten. This paragraph, as changed, alleges the installment loan agreement was with Griffin and that Griffin granted a security interest in the vehicle to GMAX.

21. Plaintiff recognized this confusion and, in paragraph 37 of his First Amended Complaint, indicates that GMAX Motors placed Burrows name on the certificate of title as an accommodation to Griffin. However, this fails to address the confusion of with whom GMAX had any rights against and, as such, against whom would Plaintiff then be alleging assuming the rights to proceed.

22. Plaintiff could have easily addressed this confusion by attaching as an exhibit the alleged installment loan agreement that he purports to have been assigned, but he does not do so.

23. Most importantly - and aside from the above-described defects - the document appears to be executed on August 16, 2004 - months after <u>all</u> alleged actions in this matter took place. The alleged advertisement was on January 15, 2004, Plaintiff observed the advertisement on the same day, his alleged telephone conversation with Wallace Johnson took place on January 19, 2004, his written correspondence to Johnson Auto Repair (attached to the original Complaint as “Exhibit A”) was dated January 20, 2004, the advertised sale date was February 20, 2004 - all alleged events were prior to August 16, 2004.

24. Even if the purported assignment is assumed to be valid, Plaintiff was not assigned these rights until August 16, 2004. The fact that Plaintiff alleges damages in the amount of $1,548 - which is the amount allegedly owed by Vayline Griffin to GMAX as of August 16, 2004 - further demonstrates that Plaintiff had no rights prior to that date.

25. Upon this basis, all allegations of steps taken by Plaintiff prior to August 16, 2004 - even if assumed to be true - are completely irrelevant to this case. Whatever communication Plaintiff may have had with Defendant or with Wallace Johnson prior to August 16, 2004, does

not matter. Prior to August 16, 2004, GMAX - not Plaintfiff - had purported rights pursuant to its installment loan agreement and security interest in the vehicle as a lienholder.

26. The FDCPA provides that, "any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of (1) any actual damage sustained by such person as a result of such failure; (2) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." (underline added) 15 U.S.C. Sec. 1692k(a).

27. Plaintiff does not allege that Defendant's actions caused any actual damage to GMAX. He does not allege that GMAX failed to receive notice of the proposed sale, or that GMAX was rebuffed in any attempts to purchase the vehicle, or that GMAX made any attempts at all to purchase the vehicle at said sale. Indeed, Plaintiff does not allege that GMAX made any inquiries about the vehicle whatsoever.

28. All of Plaintiff's assertions of alleged violations of the FDCPA by Defendant are alleged to have occurred to Plaintiff and, moreover, to have occurred prior to Plaintiff obtaining GMAX's rights by assignment. Accordingly, Plaintiff would need to allege violations by Defendant in regard to GMAX and also actual damages suffered by GMAX. The mere allegation that GMAX was previously a lienholder on the vehicle title and that they are no longer a lienholder is not a sufficient allegation of actual damages to GMAX. GMAX was allegedly owed a debt by Vayline Griffin prior to the enforcement of the lien by Wallace Johnson and – after the enforcement of said lien and the resulting new title in the name of Johnson Auto Repair – GMAX was still allegedly owed a debt by Vayline Griffin.

29. There is no way of knowing - based upon the allegations in Plaintiff's First Amended Complaint - if any alleged violations of the FDCPA by Defendant had any effect whatsoever on GMAX or even if any alleged violations took place regarding GMAX.

30. In addition, regardless of whether or not any alleged FDCPA violations may have taken place, it is also certainly possible that GMAX merely made the business decision that it was not worth paying off a lien in the amount to $1,995 to retain a the right to enforce a security interest in a vehicle for an outstanding loan balance of $1,548 – thereby voluntarily whatever right they may have had to enforce a security against the vehicle. The point is that we do not know – and Plaintiff is not in a position to allege - what notices, transactions, or other communication may or may not have occurred between Wallace Johnson and GMAX or between Defendant and GMAX at the time of the events alleged in the First Amended Complaint.

31. Even if Plaintiff 's allegations are true, these allegations are insufficient to show damage to GMAX and are also insufficient to show that Defendant caused and damage to GMAX.

**C. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED DUE TO LACK OF SUBJECT MATTER JURISDICTION**

32. The facts pled by Plaintiff in his Complaint - even if, for the sake of this Motion, are assumed to be true - do not support Plaintiff's claim that Defendant was acting as a debt collector.

33. The FDCPA defines "debt collector" as, "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. Sec. 1692(a)(6).

34. In addition, the FDCPA definition of "debt collector" applies to, for purposes of Section 1692f(6), "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests". 15 U.S.C. Sec. 1692a(6). The crucial point is that the statute is explicit that this inclusion of enforcers of security interests is, "for the purpose of Section 1692f(6)".

35. Defendant is not a "debt collector" as defined by the Fair Debt Collection Practices Act.

36. First, the allegations of the Complaint - if true - would show Defendant to have taken steps to assist Wallace Johnson, d/b/a Johnson Auto Repair, in enforcing a security interest in a vehicle. Specifically, as stated in the Notice, Defendant was taking steps "to enforce a lien existing under the laws of the State of Illinois against such articles for labor, services, skill or material expended upon or (sic) storage furnished for such articles ...".

37. Although the FDCPA does not define "security interest", the enforcement of a statutory lien giving an auto mechanic a possessory interest in a vehicle is tantamount to the enforcement of a security interest and, hence, applicable to the allegations of Plaintiff's First Amended Complaint.

38 Accordingly, all claims brought by the Complaint alleging violation of any section of the FDCPA must be dismissed for lack of jurisdiction because - even assuming Plaintiff's allegations to be true, Defendant was enforcing a lien and, as such, only Section 1692f(6) could even potentially apply.

39. Regarding Section 1692f(6), this section sets forth that:

> "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general applicable of the foregoing, the following conduct is a violation of this section: ... (6) taking or threatening to take any non-judicial action to effect dispossession or disablement of property if - (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

15 U.S.C. 1692f(6).

40. The only claim that Defendant violated Section 1692f(6) is found in paragraph 39 of Plaintiff's Complaint.

41. In said paragraph, Plaintiff alleges that Defendant applied for a new certificate of title, thereby divesting Plaintiff of his property interest in the vehicle. This allegation does not support a violation of 1692f(6) because Defendant did not file an application for a new certificate of title. (See Affidavit attached hereto as "Exhibit A".)

42. Plaintiff has presumed that Defendant applied for a new certificate of title but does not sufficiently plead any basis for this presumption. Plaintiff does not attach as an exhibit any document purporting to be an application for a new certificate of title filed with the Illinois Secretary of State by Defendant (which would be readily available and could be easily obtained).

43. Moreover, Plaintiff does not even allege - as he does with some other allegations - that Wallace Johnson "told" Plaintiff that Defendant had applied for a new certificate of title. Indeed, Plaintiff's only alleged interaction with Wallace Johnson took place on January 19, 2004, which - since it was prior to the date of the sale set forth in the Notice - was before any application for a new certificate of title could have been filed by Defendant, Wallace Johnson, or any other person.

44. More importantly, even according to Plaintiff's own Complaint, his allegation that Defendant applied for a new certificate of title has absolutely no basis and could be nothing more than a presumption or assumption - but certainly not based upon any information or belief.

45. Plaintiff also alleges that - even if Defendant did not actually apply for a new title - he prepared the application and other forms and knew or expected they would be mailed to the Secretary of State.

46. Again, even if assumed to be true for the purposes of this Motion to Dismiss, the FDCPA defines "communication" as the conveying of information regarding a debt. 15 U.S.C. Sec. 1692(a)(2). An allegation that Defendant prepared the application and other forms and knew or expected they would be mailed to the Secretary of State does not - even if true - constitute a "communication".

47. Defendant asserts that any claim Plaintiff may have regarding the alleged circumstances set forth in this Complaint is properly brought in a State Court action against Wallace Johnson - or, due to Mr. Johnson's death - against the Estate of Wallace Johnson.

48. If Plaintiff wishes to allege Defendant has improperly enforced a security interest or lien pursuant to Illinois law, that is also something that would be properly with the jurisdiction of the State Court.

49. Although Plaintiff attempts to cast his allegations as being violations of the FDCPA, his allegations are more properly characterized as a claim that Defendant has engaged in the unauthorized practice of law. (Plaintiff recognizes as much by adding Counts to this First Amended Complaint based upon the Illinois common law statutory theories of unauthorized practice of law.)

WHEREFORE, Defendant, LARRY STERN, respectfully requests that his Motion to Dismiss Count I of Plaintiff's Amended Complaint and that said Count be dismissed with prejudice.

**MOTION TO DISMISS COUNTS II, III, AND V**

Defendant, LARRY STERN, by and through his attorneys, Flynn, Palmer & Tague, by the undersigned attorney, for his Motion to Dismiss Counts II, III, and V of Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(1), states as follows:

1. - 49. Defendant realleges paragraphs 1 through 49 of the Motion to Dismiss Count I set forth hereinabove as if they were set forth in this Motion.

50. Counts II, III, and V are all based upon claims of Illinois statutory law or common law. As such, this Court's jurisdiction over the subject matter of Counts II, III, and V – as Plaintiff readily concedes – is premised entirely upon the premise that this Court has subject matter jurisdiction over Count I.

51. Since this Court does not have jurisdiction over Count I, it does not have subject matter jurisdiction over the state law claims of Counts II, III, and V.

WHEREFORE, Defendant, LARRY STERN, respectfully requests that his Motion to Dismiss Counts II, III, and V of Plaintiff's Amended Complaint and that said Count be dismissed with prejudice.

**MOTION TO DISMISS COUNT IV**

Defendant, LARRY STERN, by and through his attorneys, Flynn, Palmer & Tague, by the undersigned attorney, for his Motion to Dismiss Count IV of Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(1), states as follows:

1. - 49. Defendant realleges paragraphs 1 through 49 of the Motion to Dismiss Count I set forth hereinabove as if they were set forth in this Motion.

50. Count IV is based upon a claim of Illinois statutory law. As such, this Court's jurisdiction over the subject matter of Counts IV – as Plaintiff readily concedes – is premised entirely upon the premise that this Court has subject matter jurisdiction over Count I.

51. Since this Court does not have jurisdiction over Count I, it does not have subject matter jurisdiction over the state law claim of Counts IV.

52. In addition, Plaintiff has failed to state a cause of action pursuant to the Illinois Collection Agency.

53. Specifically, the act does not apply to, "any person or business under contract with a creditor to notify the creditor's debtors of a debt using only the creditor's name." 225 ILCS 425/2.03(11).

54. Plaintiff's First Amended Complaint does not contain any allegations that Defendant acted on his own behalf, in his own name, or made any "communications" in his name. In fact, all communications to which Plaintiff refers or that he attaches as exhibits only

contain information regarding Wallace Johnson or Johnson Auto Repair, but nowhere contain Defendant's name or any information about Defendant. Accordingly, The Collection Agency Act does not apply to this case.

55. Next, in paragraph 80 of the First Amended Complaint, it appears Plaintiff is seeking to bring this cause of action in the name of the People of the State of Illinois. Plaintiff also changed the caption of the case accordingly.

56. Plaintiff should not be able to bring this case on behalf of the People of the State of Illinois since the Collection Agency Act does not apply to the allegations set forth by Plaintiff, as well as because he has not properly added the People of the State of Illinois as a party.

57. Finally, it should also be noted that Illinois legislature has seen fit to repeal the Collection Agency Act, said repeal being effective on January 1, 2006. 5 ILCS 80/4.16.

WHEREFORE, Defendant, LARRY STERN, respectfully requests that his Motion to Dismiss Count IV of Plaintiff's Amended Complaint, that said Count be dismissed with prejudice, and that this Court find that Plaintiff is not able to bring this case on behalf of the People of the State of Illinois.

## CONCLUSION

1. Plaintiff does not have standing to sue under the FDCPA because he is attempting to base his standing upon stepping into the shoes of a creditor corporation based upon an assignment of rights from said creditor corporation.

2. Plaintiff has failed to state a cause of action in that he has not sufficiently alleged damages to Plaintiff based upon the timing of the purported assignment.

3. This Court does not have subject matter jurisdiction because Defendant is not a "debt collector", nor did he make any "communications", within the meaning of the FDCPA.

4. Finally, since the claim brought pursuant to the FDCPA must be dismissed, the state law claims of Counts II through V must be dismissed because this Court has no jurisdiction over these claims.

5. Ultimately, the allegations of this Complaint – even if true – belong, if anywhere, in state Court.

WHEREFORE, Defendant, LARRY STERN, respectfully requests that his Motion to Dismiss be granted and that Plaintiff's First Amended Complaint be dismissed with prejudice.

BY: FLYNN, PALMER & TAGUE,
Attorneys for Defendant,

By: /s/ Robert E. Jacobson

Robert E. Jacobson
FLYNN, PALMER & TAGUE
402 West Church Street
P. O. Box 1517
Champaign, IL 61824-1517
Telephone: (217) 352-5181
Fax: (217) 352-7964