E-FILED
Wednesday, 03 August, 2005 03:54:55 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| KENNETH A. MCCREADY, Plaintiff, | } | Civil No. 05-2032 |
| | } | Judge Michael McCuskey |
| vs. | } | Magistrate Judge Bernthal |
| LARRY STERN, Defendant. | } | |

FILED
AUG 0 3 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636, plaintiff objects to the Report and Recommendation of Magistrate Judge David G. Bernthal of July 20, 2005 (hereinafter, "magistrate's report" or R&R). The magistrate's report indicates a number of errors of law, and misapplication or misapprehension of law that the court may correct, in this *de novo* review (28 U.S.C. § 636(b)(1)). The Defendant's motion to dismiss should be denied.

Plaintiff has sued Defendant Larry Stern under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692k. Stern's violations of FDCPA occurred in his attempts to collect putative debt stemming from his mechanic lienor client's custody of a Chevrolet in which Plaintiff owned a *security interest*. Plaintiff calls these liens "mechanic liens" but that is a misnomer, for the Illinois Mechanics' Lien Act is not involved. Stern obtained or assisted that lienor in obtaining a new certificate of title to the Chevrolet, intentionally and feloniously omitting the Plaintiff's prior, perfected security interest. Plaintiff has alleged numerous unlawful acts, in violation of state and

federal law, including the allegations that there was no lien or interest in Johnson that could lawfully have been foreclosed (Compl., pars. 22-24), that the $1995.00 figure asserted was illegitimate, "made-up" (Compl., par. 22), that Stern advertised a lien sale at an address where no sale was intended to be held (Compl., pars. 26, 28) and that no sale was actually ever held (Compl., par. 29).

## A Lien is not a Security Interest

Magistrate Judge Bernthal concludes that defendant Stern is not a debt collector, as the term is used in the FDCPA. As will be shown herein, that is error, as a matter of law, for a number of reasons. First, the magistrate has concluded that a lien is a security interest, but this is an error of law. A lien is not a security interest, and Defendant Stern is not to be excluded (from the definition of "debt collector" in 15 U.S.C. § 1692a(6)) nor subject to the strictures of 15 U.S.C. § 1692f(6). "Security interest" is a legal term of art, well and long-defined in Illinois law (the UCC) and judicial decisions. Instead of utilizing that definition of the term of art, the magistrate judge turned to Black's Law Dictionary. This is clear and legal error. There is no principle of statutory construction that allows a federal court sitting in Illinois to ignore established Illinois law, even as to definitions of legal terms of art. "In construing matters of state law in pendent claims or in state law matters otherwise subsidiary to its federal question jurisdiction, a federal court exercising federal question jurisdiction, like a federal court sitting in diversity, is duty-bound to apply the law of the state in which it sits." *Maternally Yours, Inc., v. Your Maternity Shop, Inc.*, 234 F.2d 538, 540-41 n. 1 (2d Cir. 1956) ("[I]t is the source of the right

sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law."); *Vargas v. Calabrese*, 714 F. Supp. 714, 719 (NJ 1989); *aff'd* in relevant part, 949 F.2d 665 (3d Cir. 1991). The law of Illinois is clear; "security interest" means: "[A]n interest in personal property or fixtures which secures payment or performance of an obligation." (810 ILCS 5/1-201(37); UCC § 1-201(37)). A "security interest" is:

> [A]n interest in personal property or fixtures which secures payment or performance of an obligation. 810 ILCS 5/1-201 (37) (West 1998). A security agreement is an agreement that creates or provides for a security interest. 810 ILCS 5/9-105 (1)(1) (West 1998). A security interest is a purchase money security interest to the extent that it is taken or retained by the seller of the collateral to secure all or part of its price. 810 ILCS 5/9-107 (a) (West 1998). Such an interest is not enforceable against the debtor with respect to the collateral and does not attach unless the debtor has signed a security agreement which contains a description of the collateral, value has been given, and the debtor has rights in the collateral. 810 ILCS 5/9-203 (1) (West 1998).

*Sears, Roebuck & Co., v. Conry*, 321 Ill. App.3d 997, 748 N.E.2d 1248 (2001). Congress defines terms in the FDCPA when such terms need to be defined. Other words are intended their ordinary, commonplace meanings, including legal terms of art. The Supreme Court has held the meaning of an undefined term in the FCRA, a federal statute, is a question of Congress' intent. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). Congress did not offer a definition of either "security interest" or "lien" in the FDCPA. Where Congress uses a term that has an established meaning, the Court's obligation is to accept it, not change or disregard it,

or create a new definition. A *security interest* means one thing in Illinois, not what Black thinks it means generally, and not what the magistrate now says it is. The magistrate judge's definition is reminiscent of Humpty Dumpty's semantics:

> "I don't know what you mean by `glory'", Alice said.
>
> Humpty Dumpty smiled contemptuously. "Of course you don't — till I tell you. I meant `there's a nice knock-down argument for you.'"
>
> "But `glory' doesn't mean `a nice knock-down argument,'" Alice objected.
>
> "When I use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean — neither more nor less."
>
> "The question is," said Alice, "whether you can make words mean so many different things."
>
> "The question is," said Humpty Dumpty, "which is to be master — that's all."

L. Carroll, Through the Looking Glass and What Alice Found There, Chapter VI, page 124 (Avenel Books, New York); nod to Judge Cahn in *Marshall v. Marrero*, 536 F. Supp. 517 (1982). This Court must apply the definition instructed by Illinois law, not dictated by the whim of the magistrate judge or a law dictionary definition not premised in Illinois law. If the Court wants to adopt the magistrate's recommendation, it would be advised to consider all aspects of Revised Article 9 of the UCC which include the term "security interest" in guiding commercial enterprises and consumers in this state as to how to conduct their affairs. Plaintiff respectfully asks that, if the Court is inclined to

adopt this magistrate judge's definition, Plaintiff be afforded enough time to provide appropriate notice to the Illinois Attorney General, so that the A.G. may step in to defend the constitutionality of Illinois law in the face of a Supremacy Clause challenge and Plaintiff will file the appropriate motion for such a finding. If this Court intends to create new federal common law that renders Article 9 of the Illinois UCC invalid, the people of Illinois will insist on the opportunity to be heard.

Stern was not enforcing a *security interest*. This is a matter of law. He was attempting to collect illegal debt stemming from an illegitimate lien--illegitimate because a lien depends also on contract or agreement too, but there was none. "Lien" is also a well and long-defined term of art in the state of Illinois (and in federal law, too). This Court must apply the *plain language* of the FDCPA, respecting the language Congress used, and giving those terms that are undefined in it the meanings the Illinois courts have afforded them for decades. A lien is a type of "security" only in a general sense; it is not, however, a *security interest*. The term lien has achieved such commonplace use that it is not defined in the UCC. The UCC does define "agricultural lien" as "an interest *other than a security interest* in farm products." UCC § 9-102(a)(5) (emphasis added). In fact, Black's defines "lien" as: "A charge or security or incumbrance upon property." Black's Law Dictionary, West Publ. Co., 4th ed., 1951. But, it is not a *security interest*. If this Court intends to throw out the UCC, in order to exclude Defendant Stern from the statutory definition of "debt collector," then it must also consider, *from the allegations of Plaintiff's Complaint*, that Wallace Johnson, the

operator of the repair shop whose putative lien Defendant Stern was attempting to foreclose, in his debt collection efforts and attempts, had no lien and no security interest. A "security interest" can arise only by contract, or written agreement. What Plaintiff has, or had, was a "security interest." It was created in the "security agreement," a writing executed by the vehicle owner, including an installment loan agreement. A security interest was not, as the magistrate would have this Court adopt, created by anything lienor Wallace Johnson did. As Plaintiff has pleaded, Mr. Johnson advised him that he had done no work, that he had not charged the vehicle's owner a thing, and that he had no knowledge of the $1995.00 figure Defendant Stern unilaterally opted to publish in the Pioneer Press. It is clear, in Illinois law, that in order for a valid "security interest" to come into existence, there must be some signed agreement (called, of course, a "security agreement"; see, 810 ILCS 5/9-102(a)(73)("'Security agreement' means an agreement that creates or provides for a security interest.")). "A security interest is only enforceable against an owner of property if that owner has signed the agreement." *Motz v. Central Nat'l Bank*, 119 Ill. App.3d 601, 608, 456 N.E.2d 958, 963 (1983); cited in *Adams v. Greg Weeks, Inc.*, 327 Ill. App.3d 380, 383, 763 N.E.2d 413 (2002). Missing from the magistrate judge's report is reference to any putative signed agreement that creates the interest he suggests absolves Defendant Stern. There is no such signed writing in the instant case or, at least, neither Defendant Stern has attempted to prove this, nor has the magistrate found any such agreement. Because it appears clear that a *security interest* can arise only by agreement and that there was no agreement and, if the Court implies such an agreement, the same fails under local

(Chicago) ordinance (Ch. 4-228) and the Illinois Automotive Repair Act (815 ILCS 306). What Johnson would have had, had he actually done any work at the request of the vehicle's owner, would have been a "statutory lien." That term is defined in the bankruptcy code as: "[A] lien arising solely by force of a statute on specified circumstances or conditions ..., but does not include security interest or judicial lien, whether or not such interest or lien is provided by or dependent on a statute and whether or not such interest or lien is made fully effective by statute...." 11 U.S.C. § 101(47) (emphasis added). Had Johnson done any work, he may have had a statutory lien, arising under either the Labor & Storage Lien Act (770 ILCS 45) or the Labor & Storage Lien (Small Amount) Act (770 ILCS 50), but he performed no services. Ergo, he had no lien, either. Because this is where the bulk of Plaintiff's UCC argument lies, he will also mention here, in objection, that the magistrate refers to a non-existent statutory provision in defining security interest, in addition to the non-persuasive definition Black's assigns it. On pg. 5 of the R&R, the magistrate refers to "U.C.C. § 9-102(2) (2005)". There is no such statute. If this Court intends to define a term by reference to Illinois law, Plaintiff respectfully asks that the Court, at a minimum, cite to existing law and, of course, give him the opportunity to be heard on the subject. Courts citing non-existent statutes is not due process of law. Following the non-existent statutory cite, the report then turns to the misdirection of *Bergeron Cadillac* (see Plaintiff's argument, *infra*).

Plaintiff is prosecuting a claim against the Estate of Wallace Johnson in the Cook County Probate Court (Cook Co. # 04-P-007145 Wallace Johnson, Decedent, Kenneth A.

McCready, Claimant). This is not claim splitting; the federal claim cannot be brought in Probate court. However, in discovery in that claim, it has become obvious that Mr. Johnson did not have a work order or authorization from the vehicle owner. Before this Court dismisses Plaintiff's case, adopting the magistrate's report and recommendation, Plaintiff asks for the opportunity to supplement the record with the discovery materials from that Probate claim inasmuch as it bears substantial influence in this decision. If the Court will not allow that, then Plaintiff asks the Court to abide the principles of construction of pleadings, and accept his allegations as true, drawing all reasonable inferences in his favor. Absent from the materials turned over to Plaintiff by the Johnson Estate in discovery is any written agreement with the vehicle's owner. Plaintiff asks this Court to allow him to supplement the record, once he receives the "affidavit of completeness" from the Estate that is required by Illinois law (S.Ct.R. 214). The Estate is stalling in providing it, of course, because the absence of a written agreement in the Estate's records establishes the Plaintiff's claim in the Probate case, too. Those materials (or absent materials) will indicate that there was no legal authorization to perform any work or charge the vehicle owner for anything. Consequently, any asserted lien must fail, also as a matter of law. This Court cannot adopt the recommendation of the magistrate judge, based on the Black's Law Dictionary definition of "security interest," (R&R, pg. 5) because the interest asserted by Defendant Stern would fall under three different parts of that definition adopted by the magistrate. First, there was no "interest in property acquired by *contract*" and how the magistrate could have concluded this in the face of Plaintiff's pleading is error. There was no contract. Second, any interest

asserted would not have been "protected under local law" because, under the local law (municipal ordinance) of Chicago (Chapter 4-228; § 4-228-060), if there was no writing, there was no contract, no lien, and no protected interest. Of course, there would also have been no "protected interest" under Illinois law ("local law"), because the Automotive Repair Act (815 ILCS 306/§§ 15-60) requires a written work order or authorization before any charges may accrue and a statement of all charges on the final invoice (which there was not). Finally, the Stern defense fails under the definition's requirement that the "holder has parted with money or money's worth" too. Of course, the "holder" Wallace Johnson, the mechanic, did not part with money or money's worth. He did no work. He did not part with money or money's worth. He had no interest at all--no lien--no security interest. So, even if this Court decides to apply the magistrate's definition of "security interest" instead of the UCC's definition, as adopted in Illinois decisions, the Defendant is not entitled to the exclusion from the FDCPA's definition of "debt collector." It's obvious that what Stern was attempting to collect was illegal debt stemming from a non-transaction. It constitutes a number of crimes, too.

Because a *lien* arises also only as a matter of contract or agreement (including statutory liens), it should also appear clear, on the pleadings, that there was no lien, and that Defendant Stern was maliciously attempting to collect a sum of money without basis in law. The Illinois Appellate Court distinguished between liens and security interests, in construing Mechanics' Lien Act lien (real property):

> Generes, here, used the words "subject to an agreement" [in a contract] rather than "subject to a lien." It appears that this language was used deliberately and does not include liens, since paragraph 9.3.3 provides that the word "lien" shall include all liens, claims, security interests or encumbrances. Having included this broad definition for "lien," Generes nevertheless chose to use the word "agreement"; therefore, we must give that word its ordinary meaning and will not read it as including liens. The reference, then, is to security agreements alone and is inapplicable to mechanics' liens, since they do not arise by agreement but by statutory grant.

*Luczak Bros. v. Generes*, 116 Ill. App.3d 286, *296*, 451 N.E.2d 1267 (1983) (Mechanics' Lien Act--governing real property; not the subject of the instant suit). And, see *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App.3d 597, 609, 724 N.E.2d 49 (1999).

On this motion to dismiss, Plaintiff's allegations are to be accepted as true, and all reasonable inferences are to be drawn in his favor. *Panaras v. Liquid Carbonic Indust. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996). Instead, it would appear the magistrate's report draws all conclusions in Defendant Sterns' favor contrary to Plaintiff's allegations, and contrary to existing law.

The plain language of the FDCPA (applying the Illinois-specific definition of term "security interest" which, by the way, has also been adopted in all 50 states, D.C. and the U.S.V.Is.) yields the unavoidable conclusion that Stern is a debt collector. Of course, if the court were to adopt the magistrate's recommendation, it would be rendering null decades of commercial law and all of Revised Article 9 of the Uniform Commercial Code (UCC) now in effect. Congress knew what the term "security interest" meant when it used it in the FDCPA, initially and as amended in 1996. It knew

the meaning the courts of all 50 states (and the District of Columbia and the U.S. Virgin Islands) have accorded the term. If Congress had intended those who enforce statutory liens to be excluded from the definition of "debt collector" all it had to do was say so. It did not. The doctrine of *expressio unius est exclusio alterius* ("expression of one thing in an enactment generally excludes all others, even when there are no negative words of prohibition") requires the same conclusion. See, e.g., *Malone v. White Motor Corp.*, 435 U.S., at 517. By including those who enforce *security interests* in the enumerated exceptions to the definition of "debt collector" in FDCPA, Congress intentionally included those who enforce *liens* in the same definition. By excluding those who "enforce security interests" from the statutory definition of debt collector, Congress excluded (from the exclusion, of course) those who "enforce" liens. For this Court to extend Congress' intention to include those who enforce "liens" would be the worst sort of judicial activism.

The magistrate's report makes much of Plaintiff's assertion that Plaintiff is not attempting to state a claim under § 1692f(6) of the FDCPA. However, because Plaintiff understands that a lien is not a security interest, he wouldn't have attempted to state a claim under that section, because Stern wasn't "enforcing" a security interest. For Plaintiff to assert a claim under 15 U.S.C. § 1692f(6) would be absurd and, actually, when it comes right down to it, frivolous and sanctionable under Rule 11. That is why the magistrate's report is correct in this regard, and this regard only. Plaintiff didn't attempt to assert such a claim so, obviously, he has "failed to state" a claim. But, the

magistrate's report based, as it is, on misapprehension and misapplication of the law, erroneously concludes that Plaintiff has failed to state a claim on those sections of the FDCPA that Plaintiff did actually assert.

Of course, the magistrate's citation to *Nat'l Bank of Joliet v. Bergeron Cadillac, Inc.*, 66 Ill.2d 140 (1977) is misrepresentative of the precedent established in that case, and a misapplication to the facts of the instant case. First, *Bergeron Cadillac* established that an artisan's lien, that is, ***a common law, possessory lien*** had priority over the bank's security interest, when that common law possessory lien was afforded priority under the version of section 9-310 of the UCC then in effect. What the court held was this: "[I]ts lien takes priority over the plaintiff's earlier perfected security interest under the provisions of section 9-310 of the Uniform Commercial Code." *Id.*, at 144. That is, Bergeron Cadillac had a common law possessory lien, which, under § 9-310, was entitled to priority over the bank's security interest. In the instant case, Wallace Johnson had no lien of any kind. The magistrate's report suggests the *Bergeron Cadillac* court's holding was this: "[A] common law mechanic's lien takes priority over 'other' earlier perfected security interests under Section 9-310...." This is not what the court held. Worse, these issues are simply not involved in the instant case, at least, at this point on the Defendant debt-collector's motion to dismiss. This case is not at all about a question of priorities, so why is this in the magistrate's report? If Defendant Stern did attempt to defeat Plaintiff's claim by raising the issue (and he has not!), the Plaintiff's allegations that there was no lien defeats the priority. There can be no priority if there is no lien,

and there was no lien in the instant case. Johnson has admitted that he did no work on the vehicle; there was nothing to give rise to a lien, statutory or possessory.

For these reasons, the Court should decline to adopt the report and recommendation. The motion to dismiss should be denied. It is clear that Defendant Stern was not assisting in "enforcing" a "security interest," and so, he is not entitled to the exception from the FDCPA's definition of "debt collector." And, if he is, then Plaintiff asks this Court to hold the Uniform Commercial Code to be unconstitutional, and declare Black's Law Dictionary to be the supreme law of the land under the Supremacy Clause, in this Court's creation of new federal common law.

## Plaintiff's Standing

The Supreme Court has articulated the first rule of statutory construction:

> In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive."

*U.S. v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). See, also, *U.S. v. Palumbo Bros. Inc.*, 145 F.3d 850, 865 (7th Cir. 1998). The plain language of a statute is the most reliable indicator of congressional intent. *Time Warner Cable v. Doyle*, 66 F.3d 867, 876 (7th Cir. 1995); *U.S. v. Bank of Farmington*, 166 F.3d 853 (7th Cir. 1999). There is no ambiguity in the FDCPA or, if there

is, neither the Defendant nor the Court has pointed out such ambiguity. Nor did Congress express any intent other than that FDCPA protections extend to "any person." When construing a statute, this Court must first look to the language used by Congress, giving the words their ordinary meaning. *U.S. v. James*, 478 U.S. 597, 604; 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483. Black's defines "any" to mean: "Some; one out of many; an indefinite number. . . . 'Any' does not necessarily mean only one person, but may have reference to more than one or to many." Black's Law Dictionary, West Publ. Co., 4th ed., 1951. "'[A]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *U.S. v. Wilson*, 159 F.3d 280, 291-92 (7th Cir. 1998) (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)); see, also, *Veazey v. Comm. & Cable of Chicago, Inc.*, 194 F.3d 850 (7th Cir. 1999).

The Supreme Court has also said that looking, first, to the plain language of the statute is the "*cardinal principle*" of statutory construction. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("cardinal principle" of statutory construction is to "`give effect, if possible, to every clause and word of a statute.'") (quoting *U.S. v. Menasche*, 348 U.S. 528, 538-39 (1955)). The language of the FDCPA couldn't be plainer. The magistrate's report is critical of Plaintiff for relying on this "cardinal principle" of statutory construction and asking the court to rule, based on the plain language of the statute. See, e.g. R&R, pg. 4. In criticizing Plaintiff, by asserting *Bailey v. Security National Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) for the proposition that Plaintiff may, himself, be deemed a debt collector, ignores what *Bailey* clearly stands for (apply the plain language as written):

> Like all cases involving statutory interpretation (here, § 1692a(6)(F)), our first task is to determine if the language Congress wrote resolves the issue before us. "Where the statute's language is plain, the court's function is to enforce it according to its terms." Kariotis v. Navistar Int'l Trans. Corp., 131 F.3d 672, 680 (7th Cir. 1997).

Instead of simply applying the plain language of FDCPA, which recognizes liability of "any debt collector" who commits "any violation" of any requirement of FDCPA against the interests of "any person" in favor of "any such person," the magistrate judge's report seizes on tiny little nuances of those decisions which have recognized that when Congress said "any person" it truly meant "any person," attempting to *distinguish* those decisions from the instant case. This type of judicial activism is criticized in this Circuit. In a case construing the federal Fair Labor Standards Act, the Seventh Circuit quoted from the Second Circuit:

> The starting point for the interpretation of a statute "'is the **language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.**'" (internal citations omitted). **Here, the statutory language is quite clear and very broad.** Congress made it illegal for ***any person***, not just an "employer" as defined under the statute, to retaliate against any employee for reporting conduct "under" or "related to" violations of the federal minimum wage or maximum hour laws, whether or not the employer's conduct does in fact violate those laws. Congress might have put the risk on the employee to do his or her homework and make sure that there was actually a violation before going to the authorities, but it instead protected the employee regardless. Moreover, "the **remedial nature of the statute** further warrants an **expansive interpretation** of its provisions. . . ." Herman v. RSR Security Services. 172 F.3d 132, 139 (2d Cir. 1999). (Emphasis added).

*Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999). The Court's duties began with, and ended with, the plain language of the statute (the FLSA). The magistrate judge has ignored this obligation leaping, instead, to a principle far down the ladder of principles

of statutory construction. The Seventh Circuit has *criticized* a sister Circuit for doing the same, saying the Eighth Circuit should have looked, *first and last*, to the plain language of the particular statute in review:

> **We rejected the reasoning of the Eighth Circuit** which relied on an **analysis of the legislative history** in concluding that § 844(h)(1) is limited to arson cases and does not apply to cross-burnings. Id. at 1248; see United States v. Lee, 935 F.2d 952 (8th Cir. 1991), certiorari denied, 511 U.S. 1035. **We criticized the Eighth Circuit's methodology** in **looking first to the legislative history instead of to the language** of the **statute to assess congressional intent** as **"put[ting] the cart before the** horse." 6 F.3d at 1248. Because the language of the statute was **clear and unambiguous**, we held that § 844(h)(1)'s mandatory five-year prison term for anyone who has been convicted of using fire or an explosive to commit any felony applies to the felony of conspiracy to deny civil rights by means of a cross-burning under 18 U.S.C. § 241.

*U.S. v. Hartbarger*, 148 F.3d 777, 785 (7th Cir. 1998) (emphasis added). The magistrate's report also "puts the cart before the horse." Instead of applying the language of the Act, the magistrate has seized on *dicta* from other cases which have, themselves, applied the plain language as Plaintiff asks.

The best indicator of legislative intent is the language of the statute itself. But, if the Court doesn't accede to that standard, the next best indicator of legislative intent is the legislative history, including committee reports and debates. See *U.S. v. Markgraf*, 736 F.2d 1179 (7th Cir. 1984) (noting that **when determining Congressional intent courts look to "the language of the statute; the legislative history**; and the interpretation given by the administrative agency charged with enforcing the statute." From *Iddir v. I.N.S.*, 301 F.3d 492 (7th Cir. 2002) (emphasis added). Plaintiff recites a

number of sources of congressional intent below. "As a general rule, when statutory language is plain, there is no cause to examine other indicia of legislative intent." *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 835 F.2d 1207, 1210 (7th Cir. 1987); see, also, *Lamie v. U.S. Tr.*, ___ U.S. ___, 124 S.Ct. 1023 at 1030-31, 1033 (2004). Of course, if the Court ignores the "cardinal rule" of statutory construction, then its next step is, as in *Hartbarger*, to consider the congressional history of the FDCPA (see, Plaintiff's argument, *infra*).

As Plaintiff shows in his Response to Stern's Motion to Dismiss, the FDCPA is *remedial legislation*, which is supposed to be *liberally construed*. *McGowan v. King, Inc.*, 569 F.2d 845, 848 (5th Cir. 1978). Of course, one FDCPA decision entirely disregarded by the magistrate indicates "any person" liability is to be afforded the "broadest possible interpretation." See, e.g., *Conboy v. AT&T*, 84 F. Supp.2d 492, 504-05 n. 9 (S.D. NY 2000) ("[The language of section 1692k] is couched in the broadest possible language.") (referring to *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D. NY 1988). The magistrate's report utterly ignores this principle. It is a question of Congress' intent. The first precept of discerning that congressional intent is to look to the plain language of the statute and, where the plain language is unambiguous (and how much more unambiguous does the Congress have to be than to say "any person?"), apply it as it was intended. Instead of applying the "any person" language as Congress clearly intended, the magistrate seizes on the notion that "any person" really only means "those who stand in the shoes of" (R&R, pg. 7) an alleged debtor or "those who're in some kind of

fiduciary relationship or within some unspecified level or degree of consanguinity with the alleged debtor." (Paraphrasing, R&R, pgs. 7-8). This is error of law. If Congress meant for those restrictions to be in FDCPA, it could have made them explicit! If Congress intended for those limitations to apply to FDCPA, it could have said so. The magistrate's chosen course of statutory construction also *ignores those courts* which have read *not just the plain language* of the FDCPA but the *legislative history as well.* Those courts have said, consistently, "any person" means "any person." It only happens that the persons who've recovered in those cases may have been related to the alleged principal debtor or opened the debtor's mail by accident or by permission.

In *Wright v. Finance Svc. Of Norwalk, Inc.*, 996 F.2d 820 (6th Cir. 1993), affirmed, 22 F.3d 647 (*en banc*) (1994), the Sixth Circuit held that section 1692e is not limited to consumers: "Unlike other sections of the act where relief is limited to 'consumers,' under § 1692e a debt collection practice need not offend the alleged debtor before there is a violation . . . . " (*Id.*, at 649). The Sixth Circuit did not dwell on the notion that liability is premised on the relationship (administratrix of deceased debtor's estate) involved in that particular case. Instead, it focused on the "any person" language of the FDCPA. The court also quoted from *Riveria, supra,* with approval: "We agree with the court . . . which found that this 'liability section is couched in the broadest possible language.'" (*Id.*, at 649). It also said, "absent a limitation in the substantive provisions, the **ordinary and common understanding** of sec. 1692k is that ***any aggrieved person may bring an action under sec. 1692e***." (Emphasis added; *Id.*, at 649-50). "Broadest possible language"

seems to indicate that "any person" really and truly means *any person*, not just those in some fiduciary capacity or degree of consanguinity. The *Riveria* court held, "any person who comes in contact with the proscribed debt collection practices may bring a claim" under certain sections of the FDCPA. *Riveria, supra*, 682 F. Supp. At 175 (citing *Whatley, infra*). This Court would best further Congressional intent in FDCPA by recognizing standing in Plaintiff; if Plaintiff is permitted to sue the unscrupulous "expert" mechanic lien advisors, including Stern, for these felonious acts (of which the innocent, unsophisticated consumers are usually unaware) this "private attorney general" enforcement of FDCPA will protect consumers as well. What the magistrate missed is that, the defendant tried to collect directly from Finch, the decedent (*not the plaintiff executrix*). It was only happenstance that the plaintiff Wright opened the letters. The defendant did not claim the executrix was obligated to pay the debt. In the instant case, Stern's intent was that the original obligor or Plaintiff (or his assignor) would have to pay the phony $1995.00 lien amount, or lose the collateral. Now, in so doing, he not only violated the rights of the vehicle owner, but Plaintiff too. By this, the instant Plaintiff has suffered damages not, to be sure, as a consumer, but as a competitor in the collateral and as someone who had expressed interest in attending a legitimate lien sale and bidding on and buying the vehicle; also as someone who has come in contact with proscribed debt collection activities. The Sixth Circuit noted the "broad language of the FDCPA, the purpose of the statute, and Congress' intent to make the statute self-enforcing...." The court recited that: "Unlike other sections of the act where relief is limited to 'consumers', [n. 1] under sec. 1692e a debt collection practice need not offend

the alleged debtor before there is a violation of the provision." *Id.*, at 649. Obviously the court recognized the right of action in a non-consumer under the plain language of the FDCPA. That the court recognized the "any person" protections in one who "ha[d] the same authority as the debtor to open and read the letters of the debtor...," (*id.*, 650), is simply *dicta*. This is only in line with Congress' intent. To limit "any person" to "those who had authority to open letters" or relatives renders the words "any person" meaningless! It would also be contrary to Congress' intent expressed in debates. There's no reconciling the position that there must be privity or "standing-in-the-shoes-of" relationship with the plain language of the Act itself ("any person"). The *Wright* court then considered the legislative history of the FDCPA (after having recited the first principle of statutory construction, but without explaining why it did not simply defer to the plain and unambiguous language of the Act):

> In outlining the need for passage of the FDCPA, the Senate declared that debt collection abuse was "a widespread and serious national problem." S.Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. Congress, however, chose to leave enforcement to private, not governmental, means. S.Rep. No. 382 at 5, *reprinted in* 1977 U.S.C.C.A.N. at 1699.

See, also H.R. Rep No. 1202, 94th Cong.2d Sess. 5 ("Certainly a person who has a common name and is being hounded by a debt collector because of the debts of another person deserves the protection this legislation will offer."). But Congress didn't say only "persons who have common names," "parents," employers, or any specific persons were authorized to sue; Congress said "any person" may sue.

It is a well settled rule of construction that language used in a statute which has a settled and well known meaning, sanctioned by judicial decision, is presumed to be used in that sense by the legislative body. *Kepner v. U.S.*, 195 U.S. 100, 124, 24 S.Ct 797, 49 L.Ed. 114 (1904). It is also an established principle of statutory construction that when Congress amends a statute, after courts have interpreted that statute in a particular fashion, but without changing the substantive law, Congress is taken to have approved of the judicial interpretations. These principles apply to the instant case in two respects. First, concerning Congress' use of the term "security interest" after decades of judicial decisions distinguishing security interests from liens (and declaring priorities), in first adopting the FDCPA and then in amending it, after the Uniform Commercial Code (UCC) was adopted in all 50 states, D.C. and the U.S. Virgin Islands. Congress said "security interest," knowing well the judicial interpretations of that term in 50 states, the District and U.S.V.I. under the UCC. Congress thus did not intend to exclude debt collectors like Stern (who is, mind the court, not "enforcing a security interest") from the statutory definition of "debt collector." Second, pertaining the allowance of recourse to plaintiffs who are not consumers: It is also a well-settled principle of statutory construction that Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it **reenacts a statute without change**. *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). The presumption is particularly appropriate where Congress exhibited both a detailed knowledge of the incorporated provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate

for incorporation. *Id.* at 581. The FDCPA was last substantively amended in 1996, three (3) years after the Sixth Circuit's *en banc* decision in *Wright, supra,* four (4) years after *Dutton,* eight (8) years after *Riveria, supra,* thirteen (13) years after *West v. Costen, infra,* and fifteen (15) years after the district court's decision in *Whatley v. Univ. Collection Bur., Inc.,* 525 F. Supp. 1204 (1981). Pub. L. 104-208, div. A, title II, Sec. 2403(a)(1), *Sept. 30, 1996,* 110 Stat. 3009-430. Congress knew of the decisions in those courts, but declined to alter or amend the substantive language of the Act to legislatively over-rule those decisions, which allowed recovery to "any person[s]." Congress is not presumed to change well-established legal precedent by silence. *American Hosp. Ass'n v. NLRB,* 499 U.S. 606, 613-14 (1991). By leaving the term "security interest" unaltered in FDCPA, Congress did mean *security interest,* and not lien. No other court in this land has concluded as the magistrate judge suggests this Court should. By leaving the "any person" liability provision in § 1692k of the FDCPA unchanged when amending it in 1996, Congress must be understood to have adopted the courts' interpretations as to recourse to persons who are not consumers. In debating adoption of the FDCPA the House reported:

> This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts. This bill will make collectors behave responsibly towards people with whom they deal. Another group of people who do not owe money, but who may be deliberately harassed are the family, employer and neighbors of the consumer. These people are also protected by . . . this bill. Certainly a person who has a common name and is being hounded by a debt collector because of the debts of another person deserves the protection this legislation will offer." H.R. Rep. No. 95-131, at 8 (1977).

See, also, 17 Am. Jur. 2d. Consumer and Borrower Protection § 221 (West 1990) ("[T]he scope of the Act is not limited to consumers obligated or allegedly obligated to pay a debt, but includes any person allegedly harmed by proscribed debt collection practices directed towards the collection of another person's debt."). Congress expressed protections for "any person." In hearing, the House said its protections would extend to "the wrong person" dunned, family, employers, neighbors, those mis-identified, etc. Congress clearly intended that "any person" would mean far more persons than just those who open mail addressed to other people, or those who are entrusted with the care of others or who are in a certain degree of consanguinity, ***and it said so, explicitly***. Thus, the legislative history of the Act supports extending the protection of the FDCPA to persons other than those obligated on a debt ("consumers"). Other courts have been impressed by Congress' own words. The court in *Dutton v. Wolhar*, 809 F. Supp. 1130, 1134-35 (Del. 1992), considering two similar cases together while not consolidating them, ***quoted the exact same House Report*** in finding "any person" truly meant *any person*. It found a cause of action in plaintiff Dutton, who had been hounded to pay a debt owed by his father, who had a similar name, but lived at a different address than plaintiff. They did not live together, they did not have the same name, and there was no fiduciary relationship. The lawyer-debt collector who tried to collect from Dutton was liable. He was liable because he simply tried to collect one man's debt from another man. The "companion" case, *O'Dell*, was factually identical. O'Dell received a collection letter from defendant, *at her own home address*, asking her to pay a debt owed by her deceased mother. The lawyer-debt collector sued O'Dell, seeking to collect the same

debt. The court said nothing about O'Dell being her mother's executor or guardian nor specified any relationship other than that O'Dell was her mother's daughter. Inexplicably, the magistrate judge's report and recommendation refers to the *Dutton* case when saying, "the court held that a daughter had standing to sue after she received collection letters on the debt of her deceased father." (R&R, pg. 7). The court held no such thing! The page number of the reporter the magistrate cites for this proposition ("809 F. Supp. at 1134") also <u>says no such thing</u>. Page 1134 speaks only of "Dutton" and "his father". The magistrate's statement has nothing to do with either plaintiff in *Dutton* and nothing to do with the instant case! Dutton was a man being dunned for his deceased father's debt. O'Dell was a woman who was being dunned for her deceased mother's putative debt. The magistrate judge mixes them together. These claims deserve better attention! If the Court simply <u>applies the plain language of the FDCPA</u>, such tortured interpretations of other judicial decisions may be avoided. That court actually said, simply, "recovery under the FDCPA is not limited to 'consumers.'" (*Id.*, <u>actually reported at pg. 1134</u>). The *Dutton* court relied on *West v. Costen*, 558 F. Supp. 564 (W.D. Va 1983). In that case, a class action, a mother (*Spangler (id.*, at 579, 584*)*) who received letters directed to her asking her to pay debts ("bad" check debts) allegedly owed by her <u>adult son</u>, was granted summary judgment herself, under the extremely broad "any person" language of section 1692k (*Dutton* also relies on this case; 809 F. Supp. at 1135).

In *Whatley v. Universal Collection Bureau, Etc.*, 525 F. Supp. 1204 (N.D. Ga. 1981), the court allowed recovery from a debt collector who left threatening messages on the Whatley family's answering machine, which were heard by the debtor, Whatley, and his parents. That is, the parents were permitted to recover, as well, because they met the FDCPA's plain language definition of "any person," and because the debt collector harassed them in its collection efforts. The *Whatley* court concluded:

> The civil liability portion of the Act provides that "*any* debt collector who fails to comply with *any* provision of this subchapter with respect to *any* person is liable to such person . . ." 15 U.S.C. § 1692k(a) (emphasis added). The liability section is couched in the broadest possible language; the statute is not limited to "consumers." Moreover, a number of violations proscribed by the Act harm persons other than consumers. Defendants' contention that plaintiff parents lack standing to sue under the Act leads to the absurd conclusion that Congress created a piece of consumer protection legislation with a `private attorneys general' enforcement mechanism, and then failed to provide persons harmed by unfair debt collection practices with a cause of action. The argument is untenable.[fn4] There are certainly no policy reasons consistent with the Act that support the argument. Accordingly, this Court holds that "any person," as used in 15 U.S.C. § 1692k(a) includes persons, such as Dorothy and William Whatley, who claim they are harmed by proscribed debt collection practices directed to the collection of another person's debt. (Emphasis in original).

*Whatley v. Universal Collection Bureau, Inc.*, 525 F. Supp. 1204, 1205-06 (N.D. Ga. 1981).

The magistrate's report inexplicably refers to an unpublished decision out of the Northern District of Illinois(*Villareal v. Snow*, citation omitted; R&R, pg. 8). This practice is prohibited in all district courts within the Seventh Circuit. See, e.g., Circuit Rule 53(b)(2)(iv) ("CIRCUIT RULE 53. Plan for Publication of Opinions of the Seventh Circuit Promulgated Pursuant to Resolution of the Judicial Conference of the United States . . . (b)(2) Unpublished orders: * * * (iv) Except to support a claim of res judicata, collateral

estoppel or law of the case, shall not be cited or used as precedent (A) in any federal court within the circuit in any written document or in oral argument; or (B) by any such court for any purpose. See, also, *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003). This Court is prohibited from using unpublished decisions as precedent; and this is not the first time this Plaintiff has said this in a document filed in this Court. If the magistrate wishes to offer a citation to a reported decision to establish a legal principle, there are ample decisions available. If this Court intends to allow the magistrate to violate Circuit Rule 53, then Plaintiff asks for the equal opportunity to cite to the numerous unpublished decisions of district courts which have allowed recovery to one in his position. The magistrate judge's discussion of attorney fees is also entirely irrelevant. Plaintiff is proceeding *in pro per*, is not an attorney and could not recover his fees if he were. Why, then, even discuss attorney fee awards? There is no separate private attorney general cause of action recognized under FDCPA; the Act is, itself, enforced in private attorney general actions, in every case. Lastly, instead of referring to the legislative history or preamble of the Act itself, the magistrate cites from the definitional section for the proposition that the "FDCPA protects persons 'obligated or allegedly obligated to pay any debt,' as consumers under the Act from, unlawful collection demands." (R&R, pg. 8, citing the definition of "consumer" in section 1692a(3)). Why grasp at straws? The FDCPA's preamble explains clearly what Congress intended. See, e.g., 15 U.S.C. § 1692, entitled "Congressional findings and declaration of purpose." One stated purpose is this: "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain

from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The stated purpose of FDCPA is to eliminate abusive debt collection practices and to ensure those who abide the law are not competitively disadvantaged. It would be inconsistent with this stated purpose for eight to ten district courts to allow recovery in non-consumers, but for this Court to deny Plaintiff recovery. That recovery in an action under FDCPA is permitted in 15 U.S.C. § 1692k(a):

> Except as otherwise provided by this section, **any debt collector** who fails to comply with **any provision** of this subchapter with respect to **any person** is liable to **such person** . . . . (Emphasis added).

All that remains is for the Court to apply that "broadest possible" language as it was intended to be applied. Recognizing a cause of action, i.e., standing in Plaintiff furthers those goals, is consistent with the plain language of the statute, consistent with the judicial decisions, and finally, is consistent with expressed legislative history.

Plaintiff asks the Court to reject the recommendations of the magistrate judge, deny the Defendant's motion to dismiss, retain jurisdiction over Plaintiff's state law claims by virtue of 28 U.S.C. § 1367 and order Defendant Stern to answer.

Date: August 2, 2005

By: ______________________

Kenneth A. McCready
Plaintiff, *in pro per*
P.O. Box 10
Loda, IL 60948