E-FILED
Tuesday, 25 October, 2005 02:48:24 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | | |
|---|---|---|
| **KENNETH A. MCCREADY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 05-2032** |
| | ) | |
| **LARRY STERN,** | ) | |
| **Defendant.** | ) | |

# REPORT AND RECOMMENDATION

In February 2005, Plaintiff, Kenneth McCready, acting *pro se*, filed a Complaint and Demand for Jury Trial (#1) against Defendant, Larry Stern. In May 2005, Plaintiff filed a First Amended Complaint and Demand for Jury Trial (#16). The complaint includes five counts: (1) violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692) (hereinafter "FDCPA"); (2) unauthorized practice of law under Illinois common law; (3) unauthorized practice of law under the Illinois Attorney Act (705 ILCS 205/1); (4) unauthorized practice of a collection agency under the Illinois Collection Agency Act (225 ILCS 425/14a); and (5) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2). Plaintiff alleges that federal jurisdiction is based on federal question (28 U.S.C. § 1331) because his first count alleges violations of the FDCPA. Federal jurisdiction over the remaining state law claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

In May 2005, Defendant filed a Motion To Dismiss First Amended Complaint Pursuant to FRCP 12(b)(1) (#17). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant's Motion To Dismiss **(#17)** be **GRANTED**.

## I. Background

The following background is based on the complaint. On or about January 15, 2004, Plaintiff observed in the online edition of the *Pioneer Press* newspaper an advertisement for the sale of a 1991 Chevrolet Caprice (VIN #1G1BL53E3MW117135) to be held February 20, 2004,

to enforce a lien against Deloreia Burrows and GMAX Motors for $1,995.00. (#16, ¶¶ 17, 18.) In advance of the advertised sale date, Plaintiff purchased the loan and security interest on the vehicle from GMAX Motors. (#16, ¶ 19.) In January 2004, Plaintiff had a telephone conversation with Wallace Johnson, the mechanic who allegedly held the lien on the vehicle. (#16, ¶ 21.) Johnson told Plaintiff that he had no knowledge of the lien amount stated in the advertisement, he had done no work on the vehicle, and he had no intention of holding the sale indicated in the advertisement. (#16, ¶¶ 21-24.) He told Plaintiff that Defendant had told him he could get Johnson a clear title to the vehicles on his lot. (#16, ¶23.) Johnson said that he would check with Defendant about what was going to happen and communicate that to Plaintiff.

Plaintiff then wrote Johnson a letter, asking specifics about the vehicle. (#16, ¶ 25.) In the letter, Plaintiff asked Johnson where the sale would be held because the advertisement listed an address different than the address of Johnson's mechanic shop. (#16, ¶¶ 26-27.) Johnson failed to respond to Plaintiff's subsequent phone calls or letters. (#16, ¶ 24.)

Defendant then prepared an application for a new certificate of title of the vehicle in the name of "Johnson's Auto" and filed it with the Illinois Secretary of State. In the alternative, Plaintiff alleges that Defendant prepared and typed the application and delivered it to Wallace Johnson. The application was supported by an affirmation by Defendant or an affirmation by Johnson that Defendant prepared stating that the lien sale had been held, even though no sale had been held and Johnson had no lien on the vehicle. (#16, ¶ 29-30, 39.)

The Secretary of State approved Defendant's application for title and a certificate of title was issued for Johnson Auto Repair. The new title omitted any reference to Plaintiff's prior perfected security interest. (#16, ¶ 31.)

Plaintiff subsequently filed this suit in federal court. Count I alleges violations of Sections 1692c, 1692d, 1692e, and 1692f of the FDCPA (15 U.S.C. §§ 1692c-f), and seeks damages totaling $2,600, as well as costs and attorney's fees. (#16, ¶ 43, prayer for relief.) The remaining counts allege state law claims.

## II. Standard of Review for a Challenge to Subject Matter Jurisdiction

Under Rule 12(b)(1), a defendant may challenge jurisdiction in two ways – facially or factually. *Freiburger v. Emery Air Charter Inc.*, 795 F. Supp. 253 (N.D. Ill. 1992). A facial challenge occurs when the defendant asserts that the allegations of jurisdiction in the pleadings are facially insufficient to demonstrate the existence of jurisdiction. *Freiburger*, 795 F. Supp. at 256. Under this type of challenge, the court will accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor. *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

In addition, the defendant may dispute the existence of subject matter jurisdiction as a factual matter, "challenging the truth of the jurisdictional facts plaintiff alleged in the pleadings." *Freiburger*, 795 F. Supp. at 256. When addressing a factual challenge to jurisdiction, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)). At this point, the "presumption of correctness that [the court may] accord to a complaint's allegations falls away," and the plaintiff has the burden to come forward with "competent proof" that jurisdiction exists. *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

For purposes of ruling on a motion to dismiss for lack of standing, the Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Nevertheless, it is within the Court's authority to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact to support his claim of standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed. *Id.*

## III. Analysis

In Count I, Plaintiff alleges claims based on Defendant's violation of several sections of the FDCPA and those claims constitute the sole basis for federal jurisdiction. Defendant argues that the Court should dismiss the case for lack of subject matter jurisdiction because Plaintiff lacks standing under the FDCPA to assert these claims. In addition, Defendant contends that Plaintiff has failed to state a claim under the FDCPA because (1) Defendant is not a "debt collector" based on the FDCPA definition; (2) the newspaper notice and title application and other forms that Defendant purportedly used do not constitute "communications" under the FDCPA; and (3) Plaintiff has failed to allege that he sustained any actual damages.

Plaintiff first became involved with the events alleged in this case when he read a newspaper notice about a public sale to enforce a lien. He alleges that he read the notice, and then, in advance of the advertised sale date, he purchased the installment loan and security interest that GMAX Motors had in the vehicle. (#16, ¶ 19.) He also alleges that he had an agreement with Vayline Griffin (apparently the owner of the vehicle at issue) by virtue of the fact that GMAX Motors had assigned to him the rights to the purchase money installment loan agreement. (#16, ¶ 19.)

As an initial matter, Defendant challenges Plaintiff's allegation that he purchased the installment loan and security interest *before* the advertised sale date. In support, he relies on an "Affidavit and Statement of Account" that Plaintiff had attached to a different motion.[1] This document, signed by Akin Ojuluwayo, the president of GMAX Motors, states, "GMAX Motors, Inc., by this agreement, sells and assigns the installment loan agreement and security interest and any right to enforce the same under any theory of recovery whatsoever to Kenneth McCready." (#7, Ex. B.) The document is dated June 2004.

---

[1]Plaintiff attached this affidavit to Plaintiff's Motion for Default Judgment Against Larry Stern (#7). (See #7, Exh. B.)

In his opposition to the motion to dismiss, Plaintiff reiterates his allegation that GMAX assigned its rights to Plaintiff in advance of the purported lien sale, and implies that this assignment was executed orally by a "handshake" deal that was later reduced to writing. (#21, p. 9.) Plaintiff does not provide any further information, by way of affidavit or amendment, that supports the allegation that he purchased the security interest prior to the lien sale. Plaintiff's allegation that GMAX assigned its rights to Plaintiff before the sale is inconsistent with the affidavit signed by Ojuluwayo, which shows that the assignment of the security interest was executed after the sale date, sometime in the summer of 2004. However, at this point, the Court must accept as true Plaintiff's allegation that he purchased the security interest before the advertised sale date. *See Warth*, 422 U.S. at 501. Accordingly, the Court's analysis is based on that allegation.

**Subject Matter Jurisdiction**

The issue of standing is jurisdictional. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."). Standing is a threshold requirement imposed by Article III of the United States Constitution which limits federal subject matter jurisdiction to claims that present an actual case or controversy in whose outcome a plaintiff has a "personal stake." *Perry v. Sheahan,* 222 F.3d 309, 313 (7th Cir. 2000). It includes three core elements: First, the plaintiff must have suffered an "injury-in-fact," that is, an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit, that is, the injury has to be traceable to the defendant and not the result of the conduct of a third person not a party to the action before the court. Third, it must be likely that the injury will be redressed through a favorable decision by the court. *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208, 1211 (7th Cir. 1995) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-61 (1992)).

In Count I, Plaintiff alleges claims under the Sections 1692c, 1692d, 1692e, and 1692f of the FDCPA. (15 U.S.C. §§ 1692c-f.) It is well-settled that Section 1692c limits relief to

"consumers." *See Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003). The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). In his complaint, Plaintiff alleges that he is not a consumer as defined by the FDCPA (*see* #16, ¶ 2). As a result, he has no standing to sue under Section 1692c.

Section 1692c appears to be the most restrictive of the FDCPA's provisions. *Montgomery*, 346 F.3d at 697. Other provisions are not limited to consumers, and thus have a broader reach than Section 1692c. *Id.* (citing *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 n.1 (6th Cir. 1994) (*en banc*)). Thus, courts have held that a person other than a consumer may sue for violations of some sections of the FDPCA. Plaintiff relies on several of these cases. *See Wright*, 22 F.3d at 649-50 (allowing the administratrix of a deceased debtor to bring suit for violations of Section 1692e); *Conboy v. AT&T*, 84 F. Supp. 2d 492, 504-5 n.9 (S.D.N.Y. 2000) (allowing parents-in-law of a debtor from whom the debt collector sought payment to bring suit for violations of Section 1692e(11)); *Dutton v. Wolhar*, 809 F. Supp. 1130, 1134 (D. Del. 1992) (allowing plaintiffs to file suit for violations of Sections 1692e(2)(A), e(5), e(10), and e(11) where the debt collector sought to collect from them for their deceased parents' debts); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D.N.Y. 1988) (allowing the administratrix of a deceased debtor to file a claim for violations of Sections 1692g and 1692e(2)(A), e(5), and e(10)); *West v. Costen*, 558 F. Supp. 564, 584 (W.D. Va. 1983) (holding that a debtor's parent from whom a debt collector sought to collect could sue for violations of Sections 1692e(2)(A) and (B)).

Defendant points out that these cases all involve situations where the plaintiff was effectively "standing in the shoes" of a consumer. For example, in *Wright* and *Riveria*, courts held that an executrix of an estate was "standing in the shoes" of the deceased debtor and therefore could bring a claim under the FDCPA. *Wright*, 22 F.3d at 650; *Riveria*, 682 F. Supp. at 175. In *Dutton*, the court held that a daughter had standing to sue after she received collection letters on the debt of her deceased father. *Dutton*, 809 F. Supp. at 1134. In *West*, the court held that a parent who received a letter demanding that her son pay a debt could sue under the

FDCPA even though she was not a consumer within the meaning of the FDCPA. *West*, 558 F. Supp. at 584. In *Conboy*, the court cited language from *Riveria* to support its position that the parents-in-law of a debtor from whom the debt collector sought payment could bring suit for violations of the FDCPA. *Conboy*, 84 F. Supp. 2d at 504-5 n.9. Here, Plaintiff has not alleged that Defendant was trying to collect a debt from Plaintiff.

Plaintiff admits that he is not a consumer, and the allegations show that he is not acting on behalf of a consumer or effectively standing in the shoes of a consumer, unlike the plaintiffs in the cases listed above. Therefore, he does not have standing to sue under the FDCPA on either of these grounds.

Plaintiff also argues that he has standing based on the theory that he is acting as a "private attorney general." A plaintiff acting as a private attorney general acts not for himself alone but also "to vindicate a policy that Congress considered of the highest importance." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (discussing the provision of attorney fees for Title VII cases) (quoting H.R. Rep. No. 94-1558, p. 2 (1976)).

The FDCPA includes "private attorney general" enforcement provisions and statutory damage provisions that give "persons protected under the FDCPA" standing to sue for damages. *Villareal v. Snow*, No. 95 C 2484, 1996 WL 28254, *2-3 (N.D. Ill. Jan. 19, 1996) (unreported). The FDCPA protects persons "obligated or allegedly obligated to pay any debt" from unlawful collection demands. 15 U.S.C. § 1692a(3). Consistent with the plain language of 15 U.S.C. § 1692a(3), the Seventh Circuit has stated that the FDCPA mandates an award of attorney's fees as a means of fulfilling "Congress's intent that the Act should be enforced by *debtors* acting as private attorneys general." *Tolentino v. Friedman*, 46 F.3d 645, 651-52 (7th Cir. 1995) (citing *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991)) (emphasis added). The concept that only a debtor (or someone standing in the shoes of a debtor) may act as a private attorney general is consistent with core standing requirements mandating that a person's injury must be based on the invasion of an interest that is legally protected (in this case, by the FDCPA) and causally connected to the conduct forming the basis of the claim. Here, Plaintiff alleges that he was

injured when Defendant "wiped" his security interest from the title of the vehicle and he expressly states that he is bringing his claim as a "prior, perfected lienholder whose security interest was 'wiped' from the car's certificate of title following a putative lien sale proceeding." (#21, p. 1.) The FDCPA does not address this conduct.

The Court also notes that Sections 1692d, 1692e, and 1692f require that Defendant's conduct occurred in connection with attempts to collect a debt (although not necessarily a debt owed by Plaintiff).[2] Based on the allegations of the complaint, any relationship between Defendant's "wiping" of the title and his debt collecting activities is too tenuous to give Plaintiff standing to sue under the FDCPA.

Plaintiff cites the plain language of Section 1692k(a), the general enforcement provision of the FDCPA, as the underlying basis for his standing in this case. Section 1692k(a) states as follows: "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person . . . ." 15 U.S.C. § 1692k(a) (emphasis added). Plaintiff contends that the phrase "any person" should be construed to provide him standing to sue under the FDCPA.

The phrase "any person" has been broadly construed to facilitate the goals of the FDCPA. The FDCPA protects persons "obligated or allegedly obligated to pay any debt" from unlawful collection demands. 15 U.S.C. § 1692a(3). According to the Seventh Circuit, "[t]he FDCPA is designed to protect against abusive debt collection practices which would likely

---

[2]Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person *in connection with the collection* of a debt." (15 U.S.C. § 1692d (emphasis added).)

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means *in connection with the collection* of any debt." (15 U.S.C. § 1692e (emphasis added).)

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to *collect or attempt to collect* any debt." (15 U.S.C. § 1692f (emphasis added).)

disrupt a debtor's life." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000). *See also Wright*, 22 F.3d at 650 (construing the phrase "any person" in Section 1692k(a) to mean "at a minimum, . . . those persons . . . who 'stand in the shoes' of the debtor or have the same authority as the debtor to open and read the letters of the debtor."). However, the plain language of Section 1692k(a) provides that any debt collector who violates the FDCPA with respect to *any person* is liable to *that* person; that is, the person who is the subject of an FDCPA violation may sue a debt collector whose conduct inflicts the violation. Thus, Section 1692k(a) requires a direct connection between the debt collector and the person whose rights under the FDCPA have been violated by the debt collector's conduct; it does *not* provide that *any person* may sue a debt collector for *any* violation of the FDCPA. Here, Plaintiff alleges that he was injured because Defendant eliminated his security interest in the vehicle. That injury was not based on the invasion of an interest that the FDCPA protects.

At the time of the events alleged in the complaint, Plaintiff was either a creditor or a potential creditor of the debtor whose vehicle was the subject of the advertised sale. The Court concludes that Plaintiff lacks standing to assert his claims under the FDCPA because he does not fall under the FDCPA's definition of "consumer," does not "stand in the shoes of a consumer," and is not a debtor for purposes of acting as a private attorney general or one who is aggrieved pursuant to the statute for purposes of Section 1692k(a). The Court does not think that Congress promulgated the FDCPA with the intent to enable a lienholder to enforce his lien or to enable an uninvolved bystander who may have observed violations of the statute to invoke the civil liability provision of the FDCPA and sue a debt collector for damages. Accordingly, the Court concludes it lacks jurisdiction under the FDCPA to hear the claims in Count I and recommends dismissing Count I. In addition, the Court recommends declining to exercise supplemental jurisdiction over the remaining state law claims.

## IV. Summary

For the reasons set forth above, this Court recommends **GRANTING** Defendant's Motion To Dismiss **(#17)**. The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten (10) working days after service of a copy of

this recommendation. *See* U.S.C. 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 25th day of October, 2005.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE