E-FILED
Thursday, 10 November, 2005 04:59:29 PM
Clerk, U.S. District Court, ILCD

FILED
NOV 10 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| KENNETH A. MCCREADY, Plaintiff, | } | Civil No. 05-2032 |
| | } | Judge Michael McCuskey |
| vs. | } | |
| | } | Magistrate Judge Bernthal |
| LARRY STERN, Defendant. | } | |

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE BERNTHAL DATED OCTOBER 25, 2005**

In determining whether Plaintiff can establish liability under the Fair Debt Collection Practices Act against Defendant Stern, the Court must first look to the language of the statute. *United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunitions*, 376 F.3d 709, 712 (7th Cir. 2004) ("The cardinal rule of statutory interpretation is that courts must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose" (quotation and citation omitted)). "Where the meaning of a statute is unambiguous, our sole task is to apply it straightforwardly to the facts at issue without referring to legislative history or other devices." *United States v. Jones*, 372 F.3d 910, 913 n. 2 (7th Cir. 2004). The crux of the magistrate's recommendation is that the Court should ignore the plain language of FDCPA, rather than defer to it, as all principles of statutory construction dictate.

Preliminarily, Plaintiff notes that there is nothing in the literal language or the legislative history of the FDCPA, including the most recent amendments, that suggests *that it does not apply* to the Defendant's acts of which he complains.

Congress enacted the Fair Debt Collection Practices Act (FDCPA) in 1977 as an amendment to the Consumer Credit Protection Act "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S.Rep. No. 95-382, at 1-2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696.

The Consumer Credit Protection Act was designed not just to protect consumers' credit, but to establish the duties and obligations of banks and financial institutions, to regulate the electronic funds transfer functions (the EFTA), to clarify lenders responsibilities (TILA), the obligations of those who would act on credit repair (15 U.S.C. sec. 1679-1679j), the obligations of credit-grantors and other entities which review consumer reports (the FCRA imposes various obligations on those who act on a consumer's consumer report), etc. Though the CCPA protects consumers, it creates rights, obligations and duties in those who have nothing to do with consumers, and imposes liabilities upon them when they violate certain statutory provisions.

The Supreme Court has said: "**The Congress did not enact the Consumer Credit Protection Act in a vacuum**. The drafters of the statute were well aware that the

provisions and the purposes of the Bankruptcy Act and the new legislation would have to coexist. Indeed, the Consumer Credit Protection Act explicitly rests on both the bankruptcy and commerce powers of the Congress. . . . " (Emphasis added) *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974)).

Congress did not, indeed, enact the CCPA (of which FDCPA is part) in a vacuum. Congress is well aware that certain provisions of CCPA, including FDCPA specifically, protect others than just consumers. Congress knew of the wide-ranging effect on all industries and businesses (not just consumers) that the CCPA has. Congress also knows of the interpretations that various courts have accorded the FDCPA since its adoption, among which are those extending the right to recover to non-consumers. If Congress wishes to change this, it may do so, and it is not the role of this Court to change the law from the bench. A plain reading of the FDCPA yields the conclusion Plaintiff urges.

It is only by employing tricks of statutory construction not written into the FDCPA, not intended in the interpretation of this Act, and actually *condemned* by the higher courts that the magistrate concludes this Plaintiff lacks standing. But by even interpreting other courts' constructions of the Act, the magistrate recommends, to the Court, a course of judicial activism that is prohibited by all principles of statutory construction. The "cardinal rule" of statutory construction is to apply the plain language of every statute. Simply referring to other courts' interpretations is criticized

where the language of the particular Act is clear, plain and unambiguous, which the language of section 1692k(a) is. If the Court will only employ the language of the Act, as it is written and, obviously, as Congress intended it, Plaintiff's standing is clear. Numerous sections of FDCPA protect one in Plaintiff's position.

The Fair Debt Collection Practices Act's stated purpose is to "eliminate abusive collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It is not simply a collateral effect that the Act provides a remedy to one in Plaintiff's position. It is an <u>intended</u> effect (if the Court applies the plain language of the statute). Recognizing a right of action in Plaintiff will, indisputably, further the purposes of the Act; violators like Stern will not be able to evade responsibility. Instead, they will be forced to answer for their violations. The Plaintiff's action is consistent with both the purposes and the plain language of the Act.

The Fair Debt Collection Practices Act is <u>remedial legislation</u> that is supposed to be <u>liberally construed</u> to carry out its purposes. *Baker v. G.C. Services*, 677 F.2d 775, 780 (9th Cir. 1982); *Ross v. Comm'l Fin. Svcs.*, 31 F. Supp.2d 1077, 1079 (N.D. IL 1999); *Cirkot v. Diversified Financial Systems, Inc.*, 839 F. Supp. 941 (D. Conn. 1993).

One court, *N.C. Freed Co., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973), held that: "The [ Consumer Credit Protection Act] is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Id.* at 1214.

Only <u>one violation need be proved</u> in order for a Plaintiff to recover. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997).

The Court should simply apply the language of FDCPA, as Congress wrote it, and not read into it exclusions or exceptions not expressed in the Act by Congress. Like all cases involving statutory interpretation, it must first be determined if the language of the statute resolves the issue. *Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 387 (7th Cir. 1998). The Supreme Court has stated that "[a] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.". *U.S. v. Campos-Serrano*, 404 U.S. 293 (1971) (quoting *Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879)). All provisions of the statute must be considered and each term must be interpreted equally, so as not to deflect from the meaning of the statute. *West v. Nationwide Credit*, 998 F. Supp. 642, 644 (W.D.N.C. 1998). Specifically, as to 15 U.S.C. § 1692k, every word must be given force and § 1692k should be liberally interpreted to prohibit a debt collector from conveying any information to

any third person that concerns a debt. *Id.* at 645. If recognizing the explicit right of action in Plaintiff has a collateral side-effect of also protecting ignorant consumers (in this instance, the owner of the Caprice also got cheated out of her car, but she is probably unaware that she has been so cheated), then that is a good thing.

Ignoring the carefully chosen language and policies of the FDCPA, which Congress spent a great deal of time and effort drafting and enacting, would frustrate Congressional will and authority. *Heintz v. Jenkins*, 115 S.Ct. 1489 (1995); *Frey v. Gangwish*, 970 F.2d 1516 (6th Cir. 1992) (the FDCPA is "an *extraordinarily broad statute*" and must be enforced "as Congress has written it." Emphasis added). But that is precisely what the magistrate recommends--that the Court ignore the plain language of the Act. The Court should reject the magistrate's urging.

Where, as in the case of the FDCPA, the statute's language is plain, the sole function of the courts is to enforce it according to its terms. *Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992). In that case, the Fourth Circuit refused to follow the debt collector's argument that the court resort to legislative history.

Resort to legislative history to determine Congress' intent is to be undertaken cautiously, and it should not occur unless the statute itself is ambiguous or unclear. *United States v. Oregon*, 366 U.S. 643, 648 (1961).

The plain language of those sections of FDCPA in which Plaintiff premises his case requires the Court to construe whether the Defendant's communications were "in connection with the collection of" any debt. They were. The inquiry is not whether Defendant was attempting to collect a consumer debt from Plaintiff, but whether he was attempting to collect a debt. Period. The Defendant has not denied this. He says only that the Act does not protect the Plaintiff. He is mistaken.

If the Court adopts the magistrate's recommendation, it will be inserting into the FDCPA additional exceptions or exclusions that Congress did not intend. Congress, indeed, knows how to pass legislation. If it intended to extend FDCPA protections to only consumers or "those who stand in the shoes of" consumers, it could have done so very simply by using the English language. It is not the role of this, or any other court, to insert words where Congress did not.

In a case interpreting the federal odometer fraud statute (49 U.S.C. sec. 32705), the Eleventh Circuit rejected a defendant's urging to add an additional requirement into the statute that Congress did not include. The Court said to do so would violate the "first canon of statutory construction" and, instead, it applied the plain language:

> On its face, this statute's meaning is direct, clear and unambiguous. No language limits the meaning of the clause "with intent to defraud." Absent any such limitation, the statute's meaning is clear — if you violate the Odometer Act, and you do so with the intent to defraud your victim in any

> respect relating to the Odometer Act or the regulations passed pursuant to it, you are liable. Thus, the statute's plain language does not admit to the district court's limiting construction, which reads words into the statute that do not exist. United States v. Fisher, 289 F.3d 1329, 1338 (11th Cir. 2002) ("If the statute's meaning is plain and unambiguous, there is no need for further inquiry. The plain language is presumed to express congressional intent and will control a court's interpretation."). To augment the statutory language with an additional element, never mentioned by Congress, that the fraud must be "with respect to the vehicle's mileage" violates the cardinal rule of statutory construction.

*Owens v. Samkle Automotive, Inc.* #04-15337, slip op. at 2 (11th Cir. Sept. 23, 2005). That district court read into the odometer fraud statute the additional requirement that the "intent to defraud" must have been viz. the vehicle's odometer. The Eleventh Circuit, *not just incidentally noting that the odometer statute was remedial legislation*, put the notion to rest: "And 'where the statutory language provides a clear answer, it ends there as well.' Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438, (1999) (quoting Estate of Cowart v. Nicklos Drilling Co., 505 US 469, 475, (1992)). In other words, courts must 'presume that Congress said what it meant and meant what it said.' Harry v. Marchant, 291 F.3d 767, 770 (11th Cir. 2002)." *Owens*, slip op. at 2.

This Court, in the instant case, should likewise reject Magistrate Judge Bernthal's recommendation. Applying the plain language of the FDCPA, the Court must find that Plaintiff is "any person" who is protected by the requirements of the Act, which require a debt-collector to speak only the truth, not employ deceptive means, and not misrepresent the character, status or amount of such debt, in Stern's collection of debt.

Sections 1692c, 1692d, 1692e, 1692f and 1692g all affect many things other than mere collection of debt. For instance, "§ 1692e(8) does not affect debt collection practices at all. See 15 U.S.C. § 1692e(8)." *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998); quoted in *Perez v. Telecheck Svcs., Inc.*, 208 F. Supp.2d 1153, 1156 (D.Nev. 2002). In fact, section 1692e(8) does not implicate debt collection at all. It governs communications with "any person" and not necessarily (though it can be) in debt collection attempts (see, also, sec. 1692c(b)). It is clear that many of the FDCPA proscriptions concern activities other than direct debt collection, and those proscriptions include misleading and deceptive communications with third persons, such as the instant Plaintiff. Those sections are all implicated in the instant action; they are examples of many FDCPA sections that do not implicate debt collection. Likewise, Plaintiff has stated claims under several sections of FDCPA not dealing with express debt collection efforts. Plaintiff states a claim under each of sec. 1692c(b) (Compl., pars. 20, 28); sec. 1692d (Compl., par. 37) ; and numerous provisions of sec. 1692e (secs. 1692e (generally), 1692e(2)(A) and (B), 1692e(4), (5), (7), (10) and (14)) (Compl., pars. 32-41).

Under FDCPA, a debt collector is subject to civil liability, see 15 U.S.C. § 1692k(a), if it 'use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt,' 15 U.S.C. § 1692e, or if it 'use[s] unfair or unconscionable means to collect or attempt to collect any debt,' 15 U.S.C. § 1692f. *Kort v. Diversified Collection Svcs., Inc.*, 394 F.3d 531, 536 (7th Cir. 2005). Everything Stern did

was unfair and unconscionable, from his unauthorized practice of law, undertaking to represent Mr. Johnson in an area he is unqualified to act, to falsely advertising the lien amount, at a false location, and then omitting Plaintiff's security interest in his subsequent title application. The Seventh Circuit recognizes that use of *any* false, deceptive or misleading representations or means "in connection with" collection of any debt gives rise to liability. Under the civil liability provisions of the FDCPA, Stern is thus liable to Plaintiff, even though Plaintiff is not a consumer. 15 U.S.C. § 1692k(a) imposes this liability: "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person. . . ." This liability section holds that "any" debt collector who violates any provision of the act "with respect to any person" is liable to "such person."

If this Court applies the plain language of this section, as is its responsibility, instead of indulging the magistrate in a species of statutory construction (e.g., judicial activism) abhorred by all judicial principle, the only conclusion is that Plaintiff's case must go forward.

The magistrate attempts to draw a distinction between Stern's conduct and Plaintiff's damages, saying the connection is too "tenuous" for recovery. R&R, pg. 8. This is absurd! It ignores the liberal construction, strict liability rule of FDCPA. also ignores the Plaintiff's allegations. It is clear that, with regard to the offenses committed against Plaintiff and Plaintiff's interests, Plaintiff is, indeed, the "subject of an FDCPA

violation." (See, R&R, pg. 9). Plaintiff has alleged, among other things, that Stern advertised the putative lien sale at a phony location, not intending to have any sale. Had Plaintiff known the actual location, actual time, actual date of the sale, and the actual, legitimate amount (if any) of Johnson's putative lien, Plaintiff, as lienholder with a superior interest, could have attended and prevented the fraud that ultimately occurred. Plaintiff has also pleaded that Stern "made up" the lien amount (see, e.g., Compl., pars. 18-22). Mr. Johnson advised Plaintiff that he had no lien, for he had done no work on or to the vehicle (Compl., par. 22). Stern advertised a lien just under $2000 so as to avoid the implications of the Labor & Storage Lien Act (under which Plaintiff's security interest would be entitled to priority, and Plaintiff would be entitled to the proceeds of any lien sale). But, Stern advertised a phony lien amount in such an amount as to truly dissuade any prospective purchasers (who's going to pay $2000 for a '91 Chevy Caprice with unknown and untold damages and repairs?). It worked. Of course, in conjunction with advertising a phony sale, at a location where no sale was intended to be held, nobody appeared, and Stern then acquired title in the name of Johnson Auto (wiping Plaintiff's interest from the newly-created certificate of title). These acts of deception were committed "in connection with" Stern's attempts to collect putative debt. They indisputably caused the Plaintiff's damages; not just restricted to the actual removal of Plaintiff's security interest from the vehicle title. The magistrate simply ignored the obligation to construe the allegations of the Complaint in a light most favorable to Plaintiff, the non-movant and resolve any doubt and all inferences also in Plaintiff's favor. Applying those principles of construction of complaints, it is

clear that Plaintiff has pleaded viable causes of action. At a minimum, the **strict liability provisions** of FDCPA dictate the finding that any one of Stern's violations of the Act yields liability. Any untrue or deceptive act committed in connection with the collection of consumer debt gives rise to liability. There is no "de minimus" exception to FDCPA liability and the magistrate has been unable to find any precedent to suggest that Congress intended to incorporate such an exception or exclusion. Applying again the plain language of the statute, instead of the exception that the magistrate judge would write into it, which Congress did not see fit to write in, the Court must reject the magistrate's recommendation, and deny Stern's Motion to Dismiss.

Stern's deceptive acts indisputably caused Plaintiff damages. Even if the deceptive acts were not the cause of Plaintiff's damages, the FDCPA permits recovery of at least statutory damages. Statutory damages are available to Plaintiff even in the complete absence of actual damages - *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982); *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). The consumer need not show any actual damages in order to recover statutory damages. *Bartlett v. Heibl, supra; Baker v. G.C. Services Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982); *Harvey v. United Adjusters*, 509 F.Supp. 1218 (D.Or. 1981); *Woolfolk v. Van Ru Credit Corp.*, 783 F.Supp. 724, 725 (D.Conn. 1990); *Cacace v. Lucas*, 775 F.Supp. 502 (D.Conn. 1990); *Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Technol.*, 865 F.Supp. 1443, 1450 (D.Nev. 1994).

Finally, the magistrate imputes in Plaintiff an unintended attempt to plead a distinct cause of action under some "private attorney general" theory. Plaintiff did not attempt to state a separate cause under such theory and, in fact, there exists none. The "private attorney general" descriptor exists only to describe what private civil actions under FDCPA truly are. No private right of action under the descriptor exists.

Wherefore, Plaintiff urges the Court to reject the magistrate's report and recommendation and, applying instead the plain, unambiguous language of the FDCPA, deny Defendant Stern's Motion to Dismiss and order him to answer the Complaint, including those claims over which the Court retains jurisdiction pursuant to 28 U.S.C. sec. 1367 (supplemental jurisdiction).

Date: November 9, 2005

By: ____________________

Kenneth A. McCready
Plaintiff, *in pro per*
P.O. Box 10
Loda, IL 60948
(217) 390-7523

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| KENNETH A. MCCREADY, Plaintiff, | } | Civil No. 05-2032 |
| | } | Judge Michael McCuskey |
| vs. | } | |
| LARRY STERN, Defendant. | } | |

## NOTICE OF FILING

**To: Robert E. Jacobson, Flynn, Palmer & Tague** 402 W. Church St. Champaign, IL 61824, counsel for Larry Stern, Defendant

Please take notice that on November 10, 2005, I filed with the Clerk of this Court, one copy of Plaintiff's OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE BERNTHAL, DATED OCTOBER 25, 2005, and one copy of this document.

Name: Kenneth A. McCready, Plaintiff, *in pro per*
Address: P.O. Box 10 Loda, IL 60948
Telephone: (217) 390-7523

## PROOF OF SERVICE BY MAIL

I, Kenneth A. McCready, not an attorney, state that on November 10, 2005, I served a copy of this notice and each document specified above on each person to whom it is directed above by placing it in an envelope addressed to him or her on which first-class postage is duly prepaid and depositing the envelope in the U.S. mail in ~~Urbana~~ Loda, Illinois.

[ X] "Under penalties as provided by law I certify that the statements set forth in this instrument are true and correct."

Dated: November 10, 2005

By: [signature]
Kenneth A. McCready